Frank P. Db luga, J.
The Town of Brookhaven has commenced ian action for a declaratory judgment upholding its right to require defendants, the Parr Company of Suffolk, Inc. (“ Parr ”) and Suffolk Meadows Quarter Horse Racing Asso *379 elation, Inc. (“Suffolk Meadows ”) to obtain a building permit and certificate of .occupancy from the town. Parr is the owner of a large piece of land located in Yaphank which it has leased to Suffolk Meadows for the operation of1 a quarter horse race track. The latter defendant received a license from defendant the New York State Racing and Wagering Board, Division of Quarter Horse Racing (“Racing Board”) to erect and operate the race track.
In October, 1972, Parr applied to the Town of Brookhaven for a change of zone to permit the race track use and the rezoning was approved the following March. Construction of the track including seating stands and various buildings was commenced by defendants without first obtaining a building permit for such construction.
The plaintiff Town of Brookhaven, alleging violation of the town law and the code of the Town of Brookhaven, thereafter commenced the action and now moves for a preliminary injunction to enjoin further construction. All the defendants, by separate motion, move to dismiss the complaint for failure to state a cause of action. It is their contention that the construction and operation of a pari-mutuel quarter horse race track is regulated and controlled by the State of New York to the exclusion of any regulation by local government.
The statutory basis for quarter horse racing and gambling is found in chapter 1023 of the Laws of 1970. The Legislature followed the earlier statutory scheme used to establish thoroughbred and harness racing in the State of New York. Thus a racing commission was established to control all aspects of quarter horse racing and betting including approval of construction plans for the race track, site selection and related work activity (L. 1970, ch. 1023, § 81). Pertaining to construction, section 89 of chapter 1023 of the Laws of 1970 reads: “ Construction. Notwithstanding the provisions of any general or special statute of the state of New York or of any local law or ordinance of any municipality within the state, whether such provision or provisions be penal in character or otherwise, the provisions of this act and the rules and regulations and requirements of the quarter horse racing commission relating to the time when and place where or manner in which the quarter horse races shall be conducted in this state and the control of the grounds and structures erected or to be erected thereon upon and at which such racing is conducted and the activities conducted thereat and thereon in connection with any trial or contest of speed or power of endurance of quarter *380 horses shall be construed and deemed to be exclusive of and shall supersede any provisions of such other general or special statute, local law or ordi/nance in any wise relating thereto ” (emphasis supplied).
While plaintiff argues that section 81 (L. 1970, ch. 1023) does not pre-empt the local zoning power, examination of the New York Constitution and applicable case law compel the court to disagree with the town’s position. Section 9 of article I of the Constitution (subd. 1) has carved out an exception to the ban on gambling by permitting 1 ‘ pari-mutuel betting on horse races as may be prescribed by the legislature and from which the state ■shall derive a .reasonable revenue for the support of government ”. The Legislature has proceeded to implement and expand its interest in racing; primarily as a growing source of revenue by imposition of a tax on the gross wagers at and off the track. Thus it created a corporation to aid harness racing and provided for its funding out of the revenues collected by private racing associations. In upholding the program, the Court of Appeals gave a broad construction to the constitutional provision creating pari-mutuel betting and even permitted in effect, payment of State funds outside the normal legislative process. Although .sharply divided, .the court unanimously accepted the view that the statute passed constitutional muster by broadly construing the .requirement that a reasonable revenue was being derived for support of government (Saratoga Harness Racing Assn. v. Agriculture and N. Y. State Horse Breeding Development Fund, 22 N Y 2d 119).
Subsequently, the notion that the pari-mutuel revenue statutes were infused with an overriding State-wide interest was given greater impetus when off-track betting was found to be constitutional (Finger Lakes Racing Assn. v. New York State Off-Track Pari-Mutuel Betting Comm. 65 Misc 2d 946, affd. 30 N Y 2d 207).
Nor can it be said, as plaintiff contends, that the Statute of Local Governments is operative so as to preserve plaintiff’s right to compel compliance with local zoning and construction ordinances. This so-called home rule statute permits local government greater autonomy in dealing with its ‘‘ property, affairs or government” (N. Y. Const., 'art. IX, § 2). But beginning with the landmark case of Adler v. Deegan (251 N. Y. 467), that .phrase has been interpreted to mean that where there is a great degree of State concern, notwithstanding a high degree of concern by the locality, State power is paramount. Thus the power of the Legislature remains unfettered *381 in matters dealing with State-wide interest, e.g., revenues derived through pari-mutuel betting. As stated by Professor Anderson: “ The state of New York is not required to conform to the zoning regulations of the several municipalities. Zoning ordinances iare enacted pursuant to power granted by the enabling acts, and this does not include the power to regulate uses of land by the state itself. Nor does it include the power to limit uses by other municipalities or agencies of the state, where such uses are established and maintained pursuant to state statutes.” (Anderson, Zoning Law and Practice in N. Y. State, p. 295.)
There is also no evidence to buttress the contention of plaintiff that section 89 of chapter 1023 of the Laws of 1970 is a special rather than a general law, thus requiring approval by two consecutive sessions of the Legislature (N. Y. Const., art. IX, § 2, ¡subd. [b], par. [1]). The authority of local governments is subject to future enactments of the State Legislature and the State concern in pari-mutuel wagering is such as to render the statute general in nature (cf. Floyd v. New York State Urban Development Corp., 33 N Y 2d 1).
The court must therefore conclude that the town ordinances requiring approval and issuance of building permits by local authority and chapter 1023 ;of the Laws of 1970 are mutually exclusive with the latter statute deemed paramount. Finally, the contention that the local ordinance applies because of the private nature of the corporate defendants lacks validity due to the holding in Saratoga Harness Racing Assn. v. Agriculture and N. Y. State Horse Breeding Development Fund (22 N Y 2d 119, supra).
The motion for a preliminary injunction is denied. The motions to dismiss the complaint are granted.