Chief Judge Brextel.
 

 This is a declaratory judgment action brought against the State, the agency, and related officials to challenge the Adirondack Park Agency Act (Executive Law,
 
 *491
 
 art 27) as violative of the home rule protection afforded local governments in article IX of the Constitution. Plaintiff, private owner and would-be developer of more than 2,200 acres of land in the Adirondack Park region, appeals directly from a judgment at Special Term declaring the act valid on summary judgment (see NY Const, art VI, § 3, subd b, par [2]; CPLR 5601, subd [b], par 2).
 

 The issue is whether comprehensive zoning and planning legislation enacted by the State Legislature to ensure preservation and development of the resources of the Adirondack Park region, without re-enactment at a second session, is invalid because it encroaches upon the zoning and planning powers of local governments.
 

 There are two subsidiary issues. The first is of long standing in the area of home rule: whether the subject matter of a challenged act, in the instant case the future of a cherished regional park, is a matter of State concern. Put another way, the first subsidiary issue is whether the subject matter relates to "other than the property, affairs or government of a local government” and is thus within the powers which the home rule article expressly reserves to the State (see NY Const, art IX, §3, subd [a], par [3]). The second subsidiary issue is engendered by the specific provisions of the home rule article adopted in 1963, namely, whether, in directing enactment of a Statute of Local Governments and in requiring that powers granted under that statute be diminished only by legislation enacted and approved in two successive legislative sessions, the home rule article has qualified the Legislature’s power to act even in areas otherwise of recognized State concern.
 

 There should be an affirmance. To categorize as a matter of purely local concern the future of the forests, open spaces, and natural resources of the vast Adirondack Park region would doubtless offend aesthetic, ecological, and conservational principles. But more important, such a categorization would give a substantially more expansive meaning to the phrase "property, affairs or government” of a local government than has been accorded it in a long line of cases interpreting successive amendments to the home rule article. Nor is there any support for the proposition that powers granted under the Statute of Local Governments may not be encroached upon or even superseded by ordinary legislative enactment where matters of State concern are involved. The double enactment procedure required by article IX for withdrawal or restriction
 
 *492
 
 of powers granted under the statute was intended to afford localities protection from hasty and ill-considered legislative judgments. It was not, however, designed as a rigid impenetrable barrier to ordinary legislative enactments in matters of State concern.
 

 The land owned by plaintiff Wambat Realty is situated in the Town of Black Brook, one of numerous local governments within the area known as the Adirondack Park (see ECL 9-0101, subd 1). Although Wambat’s proposed land development project, "Valmont Village”, was permissible under the preexisting
 
 zoning and
 
 planning resolutions of the town, in 1971 the Adirondack Park Agency Act was adopted (L 1971, ch 706). Under the act plaintiff was required to seek approval for its project from the Adirondack Park Agency, created by the act to fashion a plan for future use of the public and private lands within the park region (Executive Law, §§ 803, 804, 809, subd 2). Shortly after receiving a "Notice of Project Application Incompletion” from the agency, Wambat instituted this action for a declaratory judgment challenging the act’s validity.
 

 Of particular importance to plaintiff’s contention are the 1973 amendments to the act (L 1973, ch 348), which include adoption of the Adirondack Park land use and development plan and authorization for the filing of an official plan map (Executive Law, § 805, subds 1, 2). Plaintiff argues that these provisions, which set forth a comprehensive zoning and planning program for all of the public and private lands within the park, together with other restrictions on local land use contained in the act, unconstitutionally deprive the Town of Black Brook of its own zoning and planning powers. A similar action had been brought earlier by the Town of Black Brook, but disposition on the merits was delayed by objections to the town’s standing to question, on constitutional grounds, an act of the State Legislature with respect to local powers (see
 
 Town of Black Brook v State of New York,
 
 41 NY2d 486, decided herewith).
 

 The fulcrum for plaintiff’s contention is section 2 of article IX of the Constitution, which directs the Legislature to enact "a statute of local governments granting to local governments powers including but not limited to those of local legislation and administration in addition to the powers vested in them by this article. A power granted in such statute may be repealed, diminished, impaired or suspended only by enact
 
 *493
 
 ment of a statute by the legislature with the approval of the governor at its regular session in one calendar year and the re-enactment and approval of such statute in the following calendar year” (subd [b], par [1]). This constitutional direction, part of the 1963 amendment to the entire home rule article, was implemented by the Legislature in 1964 (L 1964, ch 205).
 

 Key to plaintiff’s contention are subdivisions 6 and 7 of section 10 of the statute, which grant to cities, villages, and towns "the power to adopt, amend, and repeal zoning regulations” and to all local governments the "power to perform comprehensive or other planning work relating to [their] jurisdiction.” Plaintiff urges that since the Adirondack Park Agency Act diminishes, if it does not totally negate, the Town of Black Brook’s zoning and planning powers, powers expressly granted to the town under the quoted provisions of the Statute of Local Governments, the Agency Act to be valid must have been enacted and re-enacted in two successive legislative sessions.
 

 Defendants, on the other hand, counter that the home rule article’s grant of powers to local governments is not absolute, but qualified. In pertinent part, section 3 of article IX provides:
 

 "(a) Except as expressly provided, nothing in this article shall restrict or impair any power of the legislature in relation to:
 

 * * *
 

 "(3) Matters other than the property, affairs or government of a local government.”
 

 The reservation of power is largely repeated in section 11 of the Statute of Local Governments (subd 4). Defendants’ response to Wambat’s contention is, in short, that the subject matter of the Agency Act relates to "other than the property, affairs or government of a local government.”
 

 The term "property, affairs or government” of a local government, as constitutional terminology in defining home rule powers, is not new, but dates from 1894 (see NY Const of 1894, art XII, § 2, as amd 1923, §§ 2, 4; NY Const of 1938, art IX, § 11). The terminology, it is true, has been the subject of recurring controversy (see, e.g.,
 
 Admiral Realty Co. v City of New York,
 
 206 NY 110, 139-140;
 
 Adler v Deegan,
 
 251 NY 467, 471, mot for rearg den 252 NY 574;
 
 County of Orange v Metropolitan Transp. Auth.,
 
 71 Misc 2d 691, 703, affd 39 AD2d
 
 *494
 
 839; see, generally, New York State Constitutional Convention Committee [1938], Problems Relating to Home Rule and Local Government, vol XI, pp 34-43). Emerging, however, from that controversy is one definitive principle: that a proper concern of the State may also touch upon local concerns does not mean that the State may not freely legislate with respect to such concerns (see
 
 Adler v Deegan,
 
 251 NY 467, 491 [concurring opn Cardozo, Ch. J.],
 
 supra; Town of Brookhaven v Parr Co. of Suffolk,
 
 76 Misc 2d 378, 380-381, mod on other grounds 47 AD2d 554). Restated, the phrase "property, affairs or government” of a locality has not served to paralyze the State Legislature where to a substantial degree, in depth or extent, a matter of State concern is involved (see
 
 Manes v Goldin,
 
 400 F Supp 23, 27-28 [Judd, J.], affd 423 US 1068).
 

 Thus, in the decisively enlightening case of
 
 Adler v Deegan,
 
 the court rejected a home rule challenge to the then Multiple Dwelling Law even though the statute treated only with housing in New York City (251 NY 467, 477-478,
 
 supra).
 
 So, too, in
 
 Bugeja v City of New York,
 
 it was held that there was no home rule impediment to the Legislature’s authorization for the issuance of serial bonds to cover New York City’s pension and retirement liabilities (24 AD2d 151, 152 [Hopkins, J.], affd 17 NY2d 606). And, more recently, notwithstanding its encroachment upon village zoning powers, the Urban Development Corporation statute was held to have been validly enacted in
 
 Floyd v New York State Urban Dev. Corp.
 
 (33 NY2d 1, 6-7).
 

 It mattered not that in each of these cases there was encroachment upon local concerns; the vital distinction was that the subject matter in need of legislative attention was of sufficient importance to the State, transcendent of local or parochial interests or concerns. In
 
 Adler,
 
 it was public health
 
 (Adler v Deegan, supra,
 
 pp 477-478). In
 
 Bugeja,
 
 the continuance of a sound civil service system
 
 (Bugeja v City of New York, supra,
 
 p 152). And in
 
 Floyd,
 
 the need for expanded housing for the people of the State
 
 (Floyd v New York State Urban Dev. Corp., supra,
 
 p 7).
 

 Turning now to the Adirondack Park Agency Act, application to it of these principles leads inexorably to its validity. Of course, the Agency Act prevents localities within the Adirondack Park from freely exercising their zoning and planning powers. That indeed is its purpose and effect, not because the motive is to impair home rule, but because the motive is to
 
 *495
 
 serve a supervening State concern transcending local interests. As ably explained by Mr. Justice James Gibson at Special Term, preserving the priceless Adirondack Park through a comprehensive land use and development plan is most decidedly a substantial State concern, as it is most decidedly not merely 119 separate local concerns (see Adirondack Park Agency Act, Executive Law, § 801; Governor’s Memorandum on Approval, NY Legis Ann, 1973, p 302). All but conclusive of this aspect of the issue is the constitutional and legislative history stretching over 80 years to preserve the Adirondack area from despoliation, exploitation, and destruction by a contemporary generation in disregard of the generations to come (see NY Const of 1894, art VII, § 7; 3 Lincoln, Constitutional History of New York, pp 391-454).
 

 Plaintiff argues that the Agency Act, unlike legislation previously upheld against home rule attacks, does not relate to the life and health of New York’s people, and is therefore distinguishable. In the face of increasing threats to and concern with the environment, it is no longer, if it ever was, true that the preservation and development of the vast Adirondack spaces, with their unique abundance of natural resources— land, timber, wildlife, and water—should not be of the greatest moment to all the people of the State. These too relate to life, health, and the quality of life. Indeed, in a larger perspective, it is the teaching of the latter decades that ecological concern with the oceans and the continents has ceased to be a matter only of littoral and national concern.
 

 Nor is there any merit to plaintiff's argument that legislation dealing with issues of State concern must, unless life or health is involved, look for its source to a particular provision in the Constitution. While some of the legislation previously sustained against home rule challenges was indeed rooted in some constitutional provision, the analysis in the precedents does not indicate any absolute need for explicit constitutional authority (see, e.g.,
 
 Floyd v New York State Urban Dev. Corp.,
 
 33 NY2d 1, 6-7,
 
 supra; Matter of Freedman v Suffolk County Bd. of Supervisors,
 
 29 AD2d 661, affd 25 NY2d 873;
 
 Bugeja v City of New York,
 
 24 AD2d 151, 152, affd 17 NY2d 606,
 
 supra; Town of Brookbaven v Parr Co. of Suffolk, 76
 
 Misc 2d 378, 380-381, mod on other grounds 47 AD2d 554,
 
 supra).
 

 In sum, the Adirondack Park Agency Act, addressed to an issue of substantial State concern, relates to "other than the property, affairs or government of a local government.” That,
 
 *496
 
 however, does not end the matter. For plaintiff contends that with adoption of the 1963 home rule amendment, in particular its direction that a Statute of Local Governments be enacted, the powers reserved to the Legislature have been qualified even in areas of recognized State concern.
 

 Plaintiff’s argument may be put briefly. It accepts that under section 3 of article IX matters relating to "other than the property, affairs or government of a local government” are reserved to the State (subd [a], par [3]). But, it urges that just as subdivision (a) of section 3 limits the powers otherwise granted local governments, so too, the powers reserved to the State in subdivision (a) of section 3 are not unqualified. For, subdivision (a), which enumerates the reserved powers, is not absolute. It begins "(a) Except as expressly provided, nothing in this article shall restrict or impair any power of the legislature”. Plaintiff urges, therefore, that the opening provision, "Except as expressly provided”, refers, among other things, to the zoning and planning powers granted under the Statute of Local Governments, subject to State legislation, even in matters of State concern, only if such legislation has been enacted at two legislative sessions.
 

 While plaintiff’s reliance on the ricochet of exceptions permeating article IX and the Statute of Local Governments is ingenious, upon analysis it fails of its purpose.
 

 Undoubtedly the 1963 home rule amendment was intended to expand and secure the powers enjoyed by local governments (see NY Const, art IX, § 1 [bill of rights for local governments]; Public Papers of Governor Nelson A. Rockefeller, 1962, pp 824-825). In particular, the direction to enact a Statute of Local Governments, including the innovative double enactment procedure to impede encroachment on the granted local powers, was expressly aimed at providing "a reservoir of selected significant powers” (Memorandum of Office for Local Government, NY Legis Ann, 1963, p 223; see State of New York Office for Local Government, Local Government Seminar Notebook Materials [1964], Home Rule, p 12). But, neither the history of the amendment as a whole nor the post-1965 cases involving home rule support plaintiff’s effort to subordinate the powers reserved to the State in section 3 to the powers granted localities under the Statute of Local Governments (see, e.g.,
 
 Town of Brookhaven v Parr Co. of Suffolk,
 
 76 Misc 2d 378, 380-381, mod on other grounds 47 AD2d 554,
 
 supra;
 
 New York Temporary State Comm on the Constitutional
 
 *497
 
 Convention, Local Government [1967], p 80; Note, Home Rule and the New York Constitution, 66 Col L Rev 1145, 1152; see, also, 1 Anderson, New York Zoning Law and Practice [2d ed], § 3.03, p 82).
 

 Moreover, in the reservation of powers provision of the Statute of Local Governments itself, there is no qualification analogous to the provision prefacing subdivision (a) of section 3 of article IX, upon which plaintiff’s whole contention is founded. Instead, section 11 of the Statute of Local Governments directly states:
 

 "The legislature hereby excludes from the scope of the grants of powers to local governments in this statute and reserves to itself the right and power to enact any law described in this section notwithstanding the fact that it repeals, diminishes, impairs or suspends a power granted to one or more local governments in this statute:
 

 * * *
 

 "4. Any law relating to a matter other than the property, affairs or government of a local government.”
 

 Also significant is the term used to describe the powers reserved to the State. The drafters did not invent a new arrangement of words; they imported into the new article the old phrase "property, affairs or government” of a local government. It is unlikely that a term of art so heavily laden with the judicial gloss of the pre-1963 cases
 
 (supra)
 
 favoring the State’s power would have been used had State concerns been contemplated to be subordinate to local powers granted under the Statute of Local Governments.
 

 Finally, and most important, the interpretation of article IX which plaintiff urges upon the court was rejected in
 
 Floyd v New York State Urban Dev. Corp.
 
 (33 NY2d 1, 6-7,
 
 supra).
 
 In
 
 Floyd,
 
 as in the instant case, local zoning powers were encroached upon by a State statute enacted at a single legislative session. Not only did the court reject the home rule challenge, but in doing so it reflected the untrammeled primacy of the Legislature to act, as it always had, with respect to matters of State concern
 
 (id.).
 

 The short of the matter is that neither Constitution nor statute was designed to disable the State from responding to problems of significant State concern. In this case the controversy is between the State and the would-be developer of land for profit, and, in the companion case
 
 (Town of Black Brook v
 
 
 *498
 

 State of New York,
 
 41 NY2d 486,
 
 supra,
 
 decided herewith), between the State and a town, which understandably seeks to promote its own development, even, if necessary, at the expense of regional planning for the benefit of all the people and future generations. Such a controversy is not resolvable by the principles designed to encourage strong, decentralized, local government in matters exclusively of local concern and to restrain the State from paternalistic interference with local matters. The issue is much larger. It is whether the State may override local or parochial interests when State concerns are involved. That issue is, and has been, resolved in favor of State primacy. The price of strong local government may not be the destruction or even the serious impairment of strong State interests. Both article IX of the State Constitution and the Statute of Local Governments make patently clear that that is how the issue should be resolved. For that reason there appear the multiplication of provisos and exceptions in article IX and in the Statute of Local Governments. They are not the product of clumsy draftsmanship but of a fine-tuned sensitivity to the difficult problem of furthering strong local government but leaving the State just as strong to meet the problems that transcend local boundaries, interests, and motivations.
 

 Accordingly, the judgment at Special Term should be affirmed, with costs.
 

 Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
 

 Judgment affirmed.