Hon. Arthur Levitt State Comptroller
This is in reply to your letter of March 20, 1978 in which you request my opinion as to whether, assuming the sale of all the Spring issue of 1978 Tax and Revenue Anticipation Notes (TRANs) in April and a deficit occurring at the end of the 1978-79 State fiscal year, deficit TRANs would have to mature before the end of one year from the issuance of the Spring Notes, or could they mature at a later date.
TRANs are issued pursuant to the provisions of Article VII, § 9 of the New York Constitution, which provides, as pertinent to this inquiry:
 "The state may contract debts in anticipation of the receipt of taxes and revenues, direct or indirect, for the purposes and within the amounts of appropriations theretofore made. Notes or other obligations for the moneys so borrowed shall be issued as may be provided by law, and shall with the interest thereon be paid from such taxes and revenues within one year from the date of issue."
It would initially appear that TRANs may be issued at any time during a State fiscal year, in an aggregate amount which does not exceed the appropriations for that year, and may mature at any time within one year from their date of issuance, regardless of the maturity or issue date of any prior issue of TRANs. However, the recent construction of Article VII, § 9 by the New York State Court of Appeals (Wein v. State,39 N.Y.2d 136 [1976]) suggests some limitations upon the issuance of deficit notes which must be considered in answering your inquiry.
First, TRANs, including deficit TRANs, must be issued within the limits of appropriations previously made and in accordance with a balanced budget plan (Wein, supra, 39 N.Y.2d p. 141). Deficit TRANs, therefore, together with TRANs previously issued cannot exceed the amount of the appropriations for the fiscal year in which they are issued and, additionally, cannot exceed the amount of taxes and revenues which at the time the deficit TRANs are issued, reasonably could be expected to be received, based on authentic estimates, for the repayment of both the outstanding TRANs and the deficit TRANs without unbalancing the budget for the ensuing fiscal year.
Thus, when deficit TRANs are issued, payable in the succeeding fiscal year, the State budget for that succeeding year must take their repayment into account and project revenues therefor, even though appropriations generally need not be made to pay TRANs (Art. VII, § 16), so that an unconstitutional deficit is not created in that fiscal year by the enactment of an unbalanced budget (39 N.Y.2d pp. 148-149). The constitutional process was illustrated in the fiscal years considered by the Court of Appeals in Wein v. State, supra, and in Wein v. Carey,41 N.Y.2d 498, namely 1975-1976 and 1976-1977, both of which ended in a deficit. In Wein v. State the Court noted (39 N.Y.2d at 149) that the Governor had proposed in his Budget Message dated January 20, 1976 the issuance of $382 million in additional tax notes to meet an anticipated 1975-1976 year-end deficit. The Budget Message referred to by the Court (at p. M4, A5) projected a 1976-1977 State budget which plainly subtracted 382 million in estimating available income against which expenditures could be incurred. This condition was commented on in Wein
v. Carey (41 N.Y.2d at p. 502) as follows:
 "Included in the [1976-1977 budget] plan was provision for the redemption of anticipation notes, shortly to mature, in the sum of $382 million, the product of a deficit resulting from the 1975-1976 fiscal year. As required by the Constitution and the State Finance Law these deficit notes were to be and were paid in the 1976-1977 fiscal year from certain revenues impounded by the Comptroller (NY Const., art. VII, § 9; State Finance Law, § 55, subd. 1 [b])."
The Court went on as follows, with regard to the 1976-1977 year-end deficit (id. pp. 502-503):
 "In the budget plan for 1977-1978, there is a `new' remainder of deficit anticipation notes from the 1976-1977 fiscal year in the sum of $158 million. These too are to be paid out of certain revenues impounded by the Comptroller."
With this background, we now turn to your specific question whether deficit TRANs sold in March 1979 would have to mature within one year from the issuance of the Spring 1978 notes, or could they mature at a later date.
In its only specific reference to the maturity of deficit TRANs in theWein cases, the Court of Appeals in Wein v. State (39 N.Y.2d at 148) referred to notes "used to raise funds to offset temporary deficits in the fiscal year of issuance" which are "payable not later than in some early portion of the next fiscal year" (citing with approval 1932 Opns. Atty. Gen. 119). The Court went on to comment that such borrowing is "constitutionally permissible" if at the time the notes are issued, it can reasonably be anticipated that the State will have sufficient taxes and revenues to pay the obligations "within one year of the date of issue" (ibid.).
Thus, although the question was not squarely addressed in either of theWein cases, and the outcome of a court test cannot be predicted, it is my opinion that the Court of Appeals viewed deficit notes, issued at or about the time that outstanding TRANs were being redeemed out of revenues (as the Court knew was the case at the end of the 1975-1976 and 1976-1977 fiscal years), as new borrowing, which constitutionally could mature at any time within one year of their issuance but which, however, under the State Finance Law and in the view of the Court, had to be paid "early" in the next fiscal year out of revenues impounded by the Comptroller.
I conclude, therefore, in the light of the foregoing that TRANs issued at the end of a fiscal year to meet a deficit in revenues relative to budgeted expenditures may mature at the earliest date in the next fiscal year on which revenues will be available to pay them, based upon authentic cash flow estimates, regardless of the date of issuance of any TRANs previously issued.