Town of Junius et al., Respondents, v Robert F. Flacke, as
Commissioner of Environmental Conservation of the State
of New York, Appellant.

Fourth Department, December 14, 1979

**APPEARANCES OF COUNSEL**

*Robert Abrams, Attorney-General (Murray Susswein, Jere-*

miah *Jochnowitz* and *Francis J. Keehan* of counsel), for appellant.

*John M. Sipos* for respondents.

### OPINION OF THE COURT

Doerr, J.

On June 20, 1978 the State Department of Environmental Conservation served a notice on the Town of Junius charging a violation of Part 360 of title 6 of the Official Compilation of Codes, Rules and Regulations of the State of New York. A public hearing was held on August 1, 1978 pursuant to the Environmental Conservation Law. The hearing officer for the department found that the town operates a solid waste management facility within its borders and has done so since prior to 1972. He further found that no approval for such landfill was ever issued by the Department of Environmental Conservation for its operation after September, 1973 and that the town did not submit an application for an operating permit for such landfill within six months from the regulation's effective date (6 NYCRR 360.3), although it was advised by mail of its obligation to do so. He concluded that the town was operating a landfill for which no approval has been issued by the State Department of Environmental Conservation and for which no application for an operating permit has been submitted to the department by the town. He recommended that on or before November 30, 1978 the town submit a complete application for an operating permit for its sanitary landfill together with the applicable filing fee of $150 and that the town be assessed a civil penalty of $100, with payment suspended unless the town failed to comply with the application requirement. It was also recommended that if the town failed to comply with the recommendation for applying for an operating permit, it be directed to cease the operation of its sanitary landfill. The hearing officer's findings, conclusions and recommendations were incorporated in a decision and an order of the New York State Department of Environmental Conservation, dated January, 1979.

The proceedings involving the Town of Varick were not unlike those which concerned the Town of Junius, and the hearing officer's report with his findings of fact, conclusions of law and recommendations are also similar, as is the ultimate order of the New York State Department of Environmental

Conservation. Each town then commenced article 78 proceedings to enjoin the commissioner from enforcing his orders. Respondent moved to dismiss the petitions on the ground that each failed to state a cause of action. Special Term denied the motions to dismiss, granted a preliminary injunction enjoining enforcement of the commissioner's orders of January, 1979 and permitted respondent to serve an answer to the petitions. Respondent appeals from the orders of Special Term.

The position of petitioners can be simply stated: they have operated sanitary landfills for many years prior to 1972 under authority of subdivision 5 of section 220 of the Town Law; their landfills have been routinely inspected by agents of the Department of Environmental Conservation and by the County Health Department and found to be in compliance with the operational regulations of the department's regulations (6 NYCRR Part 360) and pose no threat to the health or well-being of the residents of the State; the cost of filing and preparing the applications for the sanitary landfill permits required by the commissioner along with payment of the application fees would result in undue financial burden upon them; the Commissioner of Environmental Conservation by his orders of January, 1979 is acting beyond the scope of his authority; the regulation upon which the administrative orders rely (6 NYCRR 360.3 [b] [2]) is invalid because the "Solid Waste Management Facilities Act" (ECL, title 7, art 27) does not specifically grant the commissioner authority to promulgate such regulations for landfills in existence prior to September 1, 1973, the effective date of the act. Respondent, on the other hand, takes the position that the regulation (6 NYCRR 360.3 [b] [2]) is a reasonable and lawful exercise of his authority to regulate landfills regardless of the date when they came into existence and that the question of the financial burden upon petitioners in order to comply with his administrative orders is legally irrelevant.

The Solid Waste Management Facilities Act became effective on September 1, 1973 (L 1973, ch 399). The act was amended and renumbered and is now title 7 of article 27 of the Environmental Conservation Law entitled "Comprehensive Statewide Resource Recovery Plan: Solid Waste Management Facilities" (L 1977, ch 425). The "legislative findings" with respect to the act stated that "It is the purpose of this act to assure that solid waste management is conducted in a safe, sanitary, efficient, economic and environmentally sound

manner throughout the state by providing a unified regulatory framework therefor." (L 1973, ch 399, § 1.)

By statute the department has the power to: "1. Adopt and promulgate, amend and repeal rules and regulations governing the operation of solid waste management facilities. Such rules and regulations shall be directed at the prevention or reduction of (a) water pollution, (b) air pollution, (c) noise pollution, (d) obnoxious odors, (e) unsightly conditions caused by uncontrolled release of litter, (f) infestation of flies and vermin, and other conditions inimical to the public health, safety and welfare. * * * Any rule or regulation promulgated pursuant hereto may differ in its terms and provisions as between particular types of solid waste management facilities and as between particular areas of the state." (ECL 27-0703.)

The Legislature in providing for new solid waste management facility approval by the department specifically provided: "Nothing herein shall relieve any person of the responsibility of fully complying with all applicable laws, rules and regulations, including regulations of the department, promulgated pursuant to subdivision one of section 27-0703, in the operation of a solid waste management facility not subject to the department's review under section 27-0707." (ECL 27-0707, subd 4.)

■ The regulation (6 NYCRR 360.3) with which petitioners take issue, entitled "Permit application procedures" in pertinent part provides:

"(a) General. Any person who is required to have a construction or operation permit shall make application for such permit consistent with this Part.

"(b) Existing facilities: operation permits. * * *

"(2) The operator of any solid waste management facility in operation on the effective date of this Part, for which no approval as aforesaid was issued, shall submit an application for an operation permit on forms provided by the department not later than six months after the effective date of this Part, unless otherwise notified in writing by the department."

The effective date of the regulation in its present form was August 28, 1977 and there is clear legislative authority for the department to promulgate such rules (ECL 27-0703, subd 1). The regulation clearly applies to petitioners and makes no distinction as to when the facility first came into use but applies instead to a "facility in operation on the effective date

of this Part." (6 NYCRR 360.3 [b] [1].) Indeed, no other interpretation is possible in view of the legislative findings contained in the enactment of the "Solid Waste Management Facilities Act".

Prior to the enactment of this legislation most municipalities had some facility for the management and treatment of solid waste. If certain municipalities, based upon the operation of a facility prior to the effective date of the act, are to be excepted therefrom, this would emasculate the legislation and effective solid waste management in the State will be thwarted, a result which would be harmful to the health, safety and welfare of the citizens of the State and contrary to the expressed legislative purpose. A solid waste facility on the border of any municipality has a very real effect not only on the neighboring municipality but on the entire State as well. "Nor is there any support for the proposition that powers granted under the Statute of Local Governments may not be encroached upon or even superseded by ordinary legislative enactment where matters of State concern are involved." *(Wambat Realty Corp. v State of New York,* 41 NY2d 490, 491.)

In *Wambat (supra,* p 494) while considering a number of species of varied public interest statutes, the court wrote: "It mattered not that in each of these cases there was encroachment upon local concerns; the vital distinction was that the subject matter in need of legislative attention was of sufficient importance to the State, transcendent of local or parochial interests or concerns. In *Adler,* it was public health *(Adler v Deegan, supra,* pp 477-478). In *Bugeja,* the continuance of a sound civil service system *(Bugeja v City of New York, supra,* p 152). And in *Floyd,* the need for expanded housing for the people of the State *(Floyd v New York State Urban Dev. Corp., supra,* p 7)."

██ ██ Since the Legislature had the power to enact such statute, including vesting the department with the regulatory function, the commissioner acted within the scope of such granted power and his regulations were neither arbitrary, capricious nor unreasonable in effecting these results. "While it is true that an administrative agency possesses no inherent legislative power, it may constitutionally exercise its authority by promulgating rules within the boundaries of its legislative delegation." *(Matter of Nicholas v Kahn,* 47 NY2d 24, 28.) Once the Legislature has fixed the primary standards it is not

only permissible but very often desirable to provide for the implementation of basic policy through the use of specialized agencies concentrating on one particular problem at a time. This includes vesting in administrative agencies the authority to prescribe rules and regulations consistent with the enabling legislation. *(Matter of Nicholas v Kahn, supra; Matter of Bates v Toia,* 45 NY2d 460.) To do otherwise would often make statutory implementation impossible.

█ Since respondent commissioner acted pursuant to a valid regulation in issuing his orders directed to petitioners, he has not acted beyond the scope of his authority, and his determination should not be disturbed.

While sympathetic to the cost of preparing the necessary plans for submission to the commissioner along with the required fee, those requirements appear reasonable and should be upheld *(City of Rome v New York State Health Dept.,* 65 AD2d 220).

Accordingly, the orders appealed from should be reversed and the petitions dismissed.

CARDAMONE, J. P., SIMONS, HANCOCK, JR., and MOULE, JJ., concur.

Orders unanimously reversed, without costs and petitions dismissed.