Gabrielli, J.
(dissenting). The majority in this case has approved the use of CPLÉ article 78 as a vehicle for challenging the wholesale omission of certain real properties from the tax rolls of a small community. Outraged by allegations in the petitions suggesting a flagrant abuse of the religious tax exemption in the Town of Hardenburgh, the majority posits that there must be a judicial remedy for the individual property owners who suffer the consequences of the tax assessor’s actions. As the majority recognizes, however, the rule articulated in Van Deventer v Long Is. City (139 NY 133, 138) presents an insuperable obstacle to affording the petitioning taxpayers a remedy in this case. Thus, the majority concludes, that 88-year-old precedent must be disregarded. Because I believe that the Van Deventer rule represents a sound policy of judicial abstention and respect for the political processes, I must respectfully offer my dissenting views.
It should be made clear that I do not sanction the actions allegedly taken by the tax assessor in this case. At this point in the litigation, the only question before the court is whether the petitioners have a legal right to maintain the present proceeding. Thus, I base my dissent only upon my colleagues’ decision to overrule the Van Deventer decision, in which this court unanimously held that a taxpayer may not maintain an action or proceeding to challenge the legality of the tax assessor’s decision to omit certain properties from the tax roll even though the taxpayer claims that the assessor acted fraudulently.
It has been observed that “[g]reat cases like hard cases make bad law” (Northern Securities Co. v United States, 193 US 197, 400 [Holmes, J.]). The import of this oft-quoted maxim is obvious. Cases which present a particularly sympathetic set of facts or which have received a high degree of notoriety may often tempt courts and Judges to adopt legal rules that serve well for the moment but cannot withstand the test of time. I am afraid that this case presents a classic illustration of the phenomenon.
*554 The allegations in the petitions, if believed, point to a truly egregious set of circumstances. The town tax assessor, it is alleged, authorized the removal of some 88% of the property within the Town of Hardenburgh from the tax roll on grounds of religious exemption. The exemptions were obtained, according to the petitions, by individuals who claimed adherence to a rather formless religion known as the Universal Life Church, an apparently nondenominational organization with few, if any, recognizable religious tenets. The net result of the tax assessor’s action is that the 12% of the town’s property owners who are not adherents have been asked to shoulder the tax burden for the entire town. It is this set of circumstances which has led the other Judges of this court to conclude, quite understandably, that there must be a judicial remedy to combat “the tyranny of the majority” (p 551).
My colleagues’ reliance upon “loaded” phrases such as this, however, cannot obscure the flaw in their analysis. Our democratic system of government is founded upon the notion that, in most instances, the views and wishes of the majority are entitled to prevail. Indeed, the “tyranny of the majority”, which is decried by my colleagues in this case, is, in actuality, the norm in our political system. And, this is so even when a majority of the populace votes in such a way as to further its own parochial or financial interests and, in so doing, impairs the interests of the minority. The various bills of rights contained in the Federal and State Constitutions are the means we have chosen to check the prerogative of the majority when it wishes threaten to impede the fundamental freedoms of those individuals who happen to find themselves in the minority. Where none of these fundamental freedoms are involved and the laws are otherwise observed, however, there is no basis in law or logic for impeding the will of the majority. Hence, it is no objection to the Van Deventer rule to say that it “endorses” the “tyranny of the majority”.
Underlying the Van Deventer rule is the simple and sound principle, which my colleagues seem to have overlooked, that there need not be a judicial remedy to right every perceived wrong among citizens. Some controversies, *555 particularly those involving the formulation or implementation of public policies, are not readily amenable to judicial resolution. These controversies, often referred to as non justiciable or “political” questions, are best left for resolution in the political or legislative arena. As we previously have had occasion to note, “[t]he power of the judiciary is as subject to * * * limitations as is that of the co-ordinate branches of government, for the spectre of judicial tyranny is no more palatable to a free people than is the threat of an uncontrolled executive or legislative branch” (Saxton v Carey, 44 NY2d 545, 549).
It is noteworthy that the problem which the other Judges of this court have chosen to address has already been remedied to a large extent without the need for resort to judicial intervention. In an apparent effort to close the “loophole” underlying the Hardenburgh situation, the Legislature has enacted an amendment to section 436 of the Real Property Tax Law which will have the effect of narrowing the availability of the religious tax exemption and, perhaps, preventing future Hardenburgh situations from arising (L 1978, ch 738; see Town of Hardenburgh v State of New York, 52 NY2d 536 [decided herewith]). Thus, contrary to my colleagues’ assertions, it simply cannot be said that the political process, represented in this case by the elected Legislature, is ineffectual in circumstances such as these.
I would also note that the majority’s effort to justify its holding today by drawing an analogy to the liberalized standards for taxpayers’ suits is unpersuasive. Our previous cases eliminating barriers to taxpayers’ suits and allowing citizens to challenge certain governmental actions have all dealt exclusively with the narrow question of the individual’s “standing” to assert an admittedly justiciable claim (see, e.g., Wein v Carey, 41 NY2d 498; Matter of Dairylea Coop. v Walkley, 38 NY2d 6; Boryszewski v Brydges, 37 NY2d 361; Matter of Douglaston Civic Assn. v Galvin, 36 NY2d 1; but see Wein v Comptroller of State of N. Y., 46 NY2d 394). None of those cases, however, suggest any fundamental shift in the court’s approach to the separate and distinct question of justiciability (Matter of Abrams v New York City Tr. Auth., 39 NY2d 990; see *556 Saxton v Carey, 44 NY2d 545, supra). Thus, they provide no support for the majority’s position in this case.
The majority’s decision to overrule Van Deventer completely rather than attempting to distinguish that holding from the peculiar circumstances presented here is bound to give rise to certain unfortunate practical consequences which the majority does not appear to have anticipated in its writing. Specifically, now that the majority has decided that Van Deventer is no longer the law in this State, there is presumably nothing to prevent individual property owners from routinely bringing article 78 proceedings to challenge the tax assessor’s decision to grant , a tax exemption to one or more of their neighbors on grounds of illegality. Indeed, when stripped to its essentials, the holding of the majority is simply that article 78 may be used by a property owner to challenge the favorable tax treatment, in any form, accorded to another as long as the allegations in the pleadings “accuse the assessor of virtually ignoring statutory guidelines”. I consider this situation to be a highly undesirable one, since although individual property owners rarely have a substantial financial stake in the amounts collected from their fellow taxpayers, petty jealousies and rivalries may lead them to utilize the procedure authorized in this case to bring vexatious lawsuits.
For all of these reason, I respectfully dissent and cast my vote to affirm the decision of the Appellate Division dismissing the petitions.
Judges Jasen, Jones, Fuchsberg and Meyer concur with Judge Wachtler ; Judge Gabrielli dissents and votes to affirm in a seprate opinion; Chief Judge Cooke taking no part.
Order reversed, with costs, and matters remitted to the Appellate Division, Third Department, for further proceedings in accordance with the opinion herein.