■ Onondaga Landfill Systems, Inc., Respondent, v Robert F. Flacke, as Commissioner of the Department of Environmental Conservation of the State of New York, et al., Appellants. (Appeal No. 1.) — Judgment unanimously reversed, without costs, and petition dismissed. Memorandum: The Department of Environmental Conservation (DEC) and Commissioner Flacke appeal from a judgment which ordered DEC to issue a mining permit to petitioner. Under the terms of a contract with Charles Realty petitioner is entitled to remove 220,000 cubic yards of soil from a drumlin (an elongate hill of glacial drift). The drumlin, which is approximately 130 feet in height and 350 feet in length, is situate on a 9.2-acre tract of land owned by Charles Realty in the Town of Geddes. Petitioner is not paying for the material, but will bear the expense of removal and reclamation. The removal operation is a form of mining which requires a permit (see ECL 23-2705, subds 7, 8, 20). Petitioner filed with DEC a mining permit application, a reclamation report, an organizational report, both short and long form environmental assessment forms (EAF) and the fee for the permit. The reclamation plan states as a long-term objective the development of a residential subdivision by Charles Realty, plans for which were preliminarily approved in 1970 by the Town of Geddes. DEC first designated the project a "Type I action." On September 25, 1979 the DEC changed the designation to

that of an "unlisted action" and made a "positive declaration" (a determination that the proposed action might have a significant impact on the environment requiring the preparation of a draft environmental impact statement [EIS]. In its positive declaration DEC listed five possible significant environmental effects and, tracking the language of 6 NYCRR 617.11 (b), stated: "f. For the purpose of determining the foregoing consequences, the action is deemed to include other simultaneous and subsequent actions which are: (1) included in any long-range plan of which the action under consideration is part. (2) likely to be undertaken as a result thereof. (3) dependent thereon." Additionally, DEC set forth several reasons in support of its determination. Petitioner commenced the instant proceeding challenging DEC's positive declaration and seeking an order compelling issuance of the mining permit. Special Term substituted its findings for those of the agency and determined that none of the five possible significant effects were in fact possible if the project were viewed solely as a mining operation, but would occur only in relation to the proposed residential development. Special Term went on to hold that the promulgation of subdivision (b) of section 617.11 permitting inclusion of subsequent unrelated projects was an "arbitrary abuse of authority." If the Legislature delegates rule-making authority to an administrative agency and furnishes it with a broad outline within which to operate, judicial inquiry is limited to whether the regulation is irrational or arbitrary (Matter of Bates v Toia, 45 NY2d 460, 464; see, also, Matter of Nicholas v Kahn, 47 NY2d 24, 30-32; Town of Junius v Flacke, 71 AD2d 423, 427-428, affd 53 NY2d 616). The Legislature has delegated rule-making authority to the commissioner (ECL 8-0113, subd 1) and has specifically directed him to promulgate criteria for determining whether or not a proposed action may have a significant environmental effect and for assessing typical associated effects of actions found likely to require the preparation of an EIS (ECL 8-0113, subd 2, pars [b], [d]). The regulation in question (6 NYCRR 617.11 [b]) is not irrational or arbitrary. Rather it is clearly consistent with the legislative intent of establishing a policy of comprehensive assessment of all related projects at an early stage of review as opposed to an unco-ordinated, individual review of projects or permit applications (see ECL 8-0103, subds 5, 9; ECL 70-0103, subd 5; ECL 70-0117, subd 1, par [b]; subd 2). The determination of whether a proposed action may have a significant impact on the environment is a matter for the exercise of discretion by DEC (ECL 8-0109, subd 4). There is a relative low threshold for requiring an EIS, and where the record establishes that the agency identified relevant areas of environmental concern, took a "hard look" at those concerns and made a reasoned elaboration of the basis for its positive declaration, that determination must be confirmed (see H.O.M.E.S. v New York State Urban Dev. Corp., 69 AD2d 222, 232). The DEC has met those requirements. Special Term erred in making findings contrary to those of DEC with respect to the short-term environmental effects of the mining operation itself. There is a rational basis for that aspect of the positive declaration and the court should not substitute its own judgment (Matter of Pell v Board of Educ., 34 NY2d 222, 231-232). The fact that DEC has included the potential effect of the proposed subdivision by Charles Realty as part of its consideration of the environmental impact of the mining operation is consistent with the policy articulated in the statute and is not arbitrary, capricious or an abuse of discretion. Finally we note that even if DEC had abused its discretion in requiring an EIS, Special Term could have directed it to process the application, but not to issue a permit. It is only after DEC gives the required notice of the application and holds a public

hearing, if appropriate (see ECL 70-0109, subd 2; ECL 70-0119, subd 1; 6 NYCRR 621.7, 621.8), that a final determination can be made. (Appeal from judgment of Onondaga Supreme Court — art 78.) Present — Cardamone, J. P., Doerr, Denman, Moule and Schnepp, JJ.