In the Matter of GEORGE LONG et al., Respondents, v ADIRON-
DACK PARK AGENCY, Appellant.

Third Department, November 16, 1989

## APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Douglas H. Ward, Peter*

*H. Schiff, Val E. Washington* and *Lawrence A. Rappoport* of counsel), for appellant.

*Walter O. Rehm, III,* for respondents.

*Bartlett, Pontiff, Stewart, Rhodes & Judge, P. C.,* for Lake George Association and others, *amici curiae.*

### OPINION OF THE COURT

LEVINE, J.

Petitioners are the owners of Blue Water Manor, a resort comprising approximately seven acres, with frontage on Basin Bay, Lake George, in the Town of Bolton (hereinafter the Town), Warren County. In May 1988 petitioners applied for an area variance to convert Blue Water Manor into a 32-unit condominium development. After conducting a hearing on the application, the Town Zoning Board of Appeals (hereinafter ZBA) granted the application on June 13, 1988. Pursuant to Executive Law § 808 (3) and implementing regulations (9 NYCRR 582.6 [b]), the ZBA sent notice of the application to respondent on May 19, 1988. Under section 808 (3), respondent has jurisdiction to review the granting of such a variance and may reverse a local zoning authority's determination if it finds that "such variance involves the provisions of the land use and development plan as approved in the local land use program * * * and was not based upon the appropriate statutory basis of practical difficulties or unnecessary hardships".

Respondent responded by letter dated June 16, 1988 in which it advised that the application fell within the class of cases subject to its statutory power of review and requested a copy of the application materials. On June 21, 1988, respondent received notification that the ZBA had granted petitioners' application on June 13, along with copies of the first page of the application, an undated narrative description of the proposed development, the recommendation of the Town Planning Board and two letters in opposition. Notification of the grant of the variance was in compliance with the regulations *(see,* 9 NYCRR 582.6 [d]).

After reviewing the foregoing documents respondent issued a decision dated July 19, 1988, reversing the ZBA essentially on the ground that there had been no finding of practical difficulties to justify the variance requested. Respondent also noted that it had not received a complete record of the evidence before the ZBA, including a copy of the minutes of

the hearing, as it had previously advised was needed in every case subject to its review.

On September 7, 1988, respondent received notice from the ZBA that they would again consider petitioners' request for a variance at its meeting scheduled for September 12. The minutes of the September 12, 1988 meeting indicate that petitioners had reduced the number of condominium units for which the area variance was sought from 32 to 30. On September 26, 1988, respondent received written notice of the ZBA's September 12 approval of the variance, subject to 10 conditions. Shortly thereafter, respondent's staff orally requested from the ZBA additional information, including a map of the site showing year-round and seasonal units and any financial information pertinent to the financial hardship claimed by petitioners. This request was repeated by letter of October 7, 1988. In response to that request, petitioners' attorney sent to respondent, *inter alia,* two site plans of the proposed conversion, a letter from petitioners' consulting engineer and a copy of their variance application. These documents were received by respondent on October 24, 1988.

By decision dated November 14, 1988, respondent again reversed, citing as reasons the absence of concrete proof by petitioners of significant economic injury if the zoning regulations were strictly applied and that the character of the surrounding area would not be adversely affected by the proposed change. Petitioners then brought this CPLR article 78 proceeding to set aside respondent's reversals of both the June and September 1988 area variances granted by the ZBA. The sole ground for annulment alleged in the petition was that respondent's reversals were untimely under Executive Law § 808 (3), having been rendered more than 30 days after the ZBA's determinations granting the variances. Respondent appeals from the judgment of Supreme Court granting the petition in all respects.

The judgment should be reversed. Executive Law § 808 (3) provides that, upon the application for a variance, the local municipal zoning authority "shall give written notice thereof to [respondent] *together with such pertinent information as [respondent] may deem necessary"* (emphasis supplied). The section further provides that a variance granted by the local zoning body "shall not take effect for thirty days after the granting thereof", and for respondent's authority to review and reverse "within such thirty day period" (Executive Law § 808 [3]). Respondent's regulations require notice by the ZBA

to respondent not only of the filing of an application for a variance but also of the granting thereof (9 NYCRR 582.6 [d]). Respondent has interpreted both the statute and the regulations to the effect that the 30-day period within which it must review and reverse the local municipal zoning authority's approval of a variance does not begin to run until respondent receives both notice of the local body's determination and the relevant documents and data upon which that determination was based. We uphold that interpretation.

It is true, as petitioners argue, that a literal reading of Executive Law § 808 (3) suggests that, irrespective of when respondent receives notice of a local municipality's decision to grant a variance or the variance record before the local body necessary for respondent to undertake responsible review thereof, respondent's power to reverse is exhausted upon the lapse of 30 days from the actual granting of the variance. Such a construction, however, would conflict with the purposes of the Adirondack Park Agency Act *(see,* Executive Law art 27) (hereinafter the Act), especially the 1973 amendments thereto (L 1973, ch 348). Those amendments reflect the Legislature's purpose of "preserving the priceless Adirondack Park through a comprehensive land use and development plan" *(Wambat Realty Corp. v State of New York,* 41 NY2d 490, 495). The amendments include the adoption of a specific Adirondack Park land use and development plan (Executive Law § 805). The Act, in its statement of purposes (Executive Law § 801), recognized the necessity of State intervention to protect the Adirondack Park from encroachments sought through local land use regulatory authorities. "Local governments in the Adirondack park find it increasingly difficult to cope with the unrelenting pressures for development being brought to bear on the area, and to exercise their discretionary powers to create an effective land use and development control framework" (Executive Law § 801). Yet the Act, as amended, also provided for local municipality participation in land use planning and regulation within the Adirondack Park. Respondent is empowered to review a municipality's zoning ordinance and other land use legislation to determine whether such codes and ordinances meet, at a minimum, the requirements of the State comprehensive plan (Executive Law § 807). Upon approval by respondent, the local legislative regulatory scheme becomes the municipality's "local land use program" (Executive Law § 802 [32]; § 807 [1]). Thereupon, the municipality initially assumes respondent's authority to pass upon propos-

als for a certain class of development projects within the locality's jurisdiction (Executive Law § 808 [2]; § 810 [2]). Nonetheless, supervision over local governmental land use and development decisions to insure consistency with the State comprehensive plan was reserved to respondent through its review powers under Executive Law § 808, as already outlined.

The Town's land use ordinances were approved by respondent in 1980. In pertinent part, section 9.020 of the Town's Zoning Ordinance provides that preexisting structures associated with, *inter alia,* resort hotels such as Blue Water Manor cannot be converted to condominiums without site plan review and that any such conversion must conform to the remaining provisions of the Zoning Ordinance. Petitioners have not challenged respondent's conclusion that, because their seven-acre resort lies within an area zoned to permit only one principal building per 1.3 acres, the variance granted by the ZBA here was substantial, i.e., permission to convert to 30 units, which was six times greater than the maximum permitted by the Town Zoning Ordinance.

It seems virtually self-evident that petitioners' literal interpretation of the time limitation for review by respondent and reversal of locally granted variances contained in Executive Law § 808 (3) would substantially jeopardize respondent's exercise of its statutory responsibility to supervise land use and development regulation by local governments within the Adirondack Park. To illustrate through an extreme hypothetical, a local zoning board could effectively thwart respondent's review, under petitioners' interpretation, by simply failing to give notice of its decision to grant a variance, or by delaying transmittal of the variance record before it until the end of the 30-day period. Literal application of the time limit from the date of actual local approval of a variance also conflicts with, and renders meaningless, the statutory duty of the local body to send to respondent both notice and "such pertinent information as [respondent] may deem necessary" (Executive Law § 808 [3]) for its review.

Petitioners' suggestion, that the danger of respondent being denied meaningful opportunity to review can be alleviated by its enlisting the cooperation of municipalities in prompt transmittal of the materials necessary for review, or by the respondent's exercise of its statutory right to participate in the proceedings on a variance application before the local body *(see,* Executive Law § 808 [2]), are unpersuasive. The concept of full cooperation between respondent and local land use

regulators is inconsistent with the assumption underlying the Act, i.e., that safeguards are necessary to insure that the Adirondack Park does not fall victim to the pressures of local interests applied to local land use regulators. As stated in *Wambat Realty Corp. v State of New York (supra,* at 494-495), "the * * * Act prevents localities within the Adirondack Park from freely exercising their zoning and planning powers. That indeed is its purpose and effect * * * because the motive is to serve a supervening State concern transcending local interests". The potentially adversarial relationship between respondent and local government regarding review by respondent is recognized under the Act in its provision giving the local zoning body standing to petition Supreme Court under CPLR article 78 for annulment of a reversal by respondent of its grant of a variance (Executive Law § 808 [3]). To require respondent to insure timely and thorough review by appearing and participating in every variance proceeding subject to the Act in the approximately 119 local governmental units within the Adirondack Park *(see, Wambat Realty Corp. v State of New York, supra,* at 495) would place a severe and impractical burden on respondent, thereby weakening its ability to perform its proper, supervisory role under the Act.

Thus, there is no realistic way that the literal meaning of the time limitations on review by respondent and reversal of local variances under Executive Law § 808 (3) can be applied without impairing respondent's ability to implement the purposes and policies of the Act. Under such circumstances, this court is not powerless to give meaning to statutory language which serves, rather than defeats, the legislative intent. "Adherence to the letter will not be suffered to 'defeat the general purpose and manifest policy intended to be promoted' " *(Surace v Danna,* 248 NY 18, 21 [Cardozo, Ch. J], quoting *Spencer v Myers,* 150 NY 269, 275; *see, Matter of Hogan v Culkin,* 18 NY2d 330, 335; *Motor Vehicle Acc. Indem. Corp. v Eisenberg,* 18 NY2d 1, 3; *Matter of Petterson v Daystrom Corp.,* 17 NY2d 32, 38). Therefore, we construe the time limitation for review by respondent and reversal under Executive Law § 808 (3) to commence to run upon respondent's receipt of notice of the grant of the variance by the local zoning officials and of the variance record and other pertinent materials, requested with reasonable promptness by respondent. Under this interpretation, respondent timely issued reversal of the variances granted by the ZBA.

It should also be noted that Supreme Court's annulment of

respondent's July 19, 1988 reversal of the ZBA cannot stand for an alternative reason, i.e., the failure of petitioners to seek CPLR article 78 review within the applicable period of limitations *(see,* Executive Law § 818).

MAHONEY, P. J., WEISS, MIKOLL and YESAWICH, JR., JJ., concur.

Judgment reversed, on the law, without costs, determination confirmed and petition dismissed.