81 N.Y.2d 906 (1993)
In the Matter of Hunt Brothers, Inc., Respondent,
v.
Robert C. Glennon, as Executive Director of Adirondack Park Agency, et al., Appellants.
Court of Appeals of the State of New York.
Argued February 17, 1993.
Decided April 1, 1993.
Robert Abrams, Attorney-General, Albany (Joan Leary Matthews, Jerry Boone, Peter H. Schiff and Val E. Washington of counsel), for appellants.
Lustberg & Ferretti, Long Lake (Robert M. Lustberg and Joan M. Ferretti of counsel), for respondent.
John W. Caffry, Glens Falls, for Residents Against Gravel Extraction and others, amici curiae.
Chief Judge KAYE and Judges SIMONS, TITONE, HANCOCK, JR., and SMITH concur in memorandum; Judge BELLACOSA dissents and votes to affirm in an opinion.
*908 MEMORANDUM.
The order of the Appellate Division should be reversed, with costs, and the petition/complaint dismissed.
Petitioner operates a sand and gravel mine in the Town of Hope, Hamilton County, which is located within the Adirondack Park district (see, ECL 9-0101; see generally, Executive Law art 27). In 1989, after petitioner had commenced blasting operations pursuant to a permit issued by the Department of Environmental Conservation (DEC) pursuant to the Mined Land Reclamation Law (ECL art 23, tit 27 [MLRL]), the Adirondack Park Agency (APA) concluded that petitioner's business was also subject to its regulations, including the requirement of an APA-issued permit (see, Executive Law § 809). Petitioner initially participated in APA's permit review process, but a dispute between petitioner and the agency soon arose concerning the scope of the latter's jurisdiction. Petitioner thereafter commenced this combined CPLR article 78 proceeding and declaratory judgment action, seeking an adjudication barring the APA from exercising jurisdiction over its mining operation.
The courts below erred in granting petitioner relief. The MLRL establishes a comprehensive legislative plan for the regulation of mining and land reclamation by DEC (see, ECL 23-2703 [1]). *909 As drafted at the time the events in this case took place, the law provided that its regulatory scheme "shall supersede all other state and local laws relating to the extractive mining industry" (see, ECL 23-2703 [former (2)], amended L 1991, ch 166, § 228).[*] In Matter of Frew Run Gravel Prods. v Town of Carroll (71 N.Y.2d 126, 131), we held that this supersession clause does not preclude local zoning ordinances that are addressed to subject matters other than extractive mining and that affect the extractive mining industry only in incidental ways. Such local laws do not "frustrate the statutory purpose of encouraging mining through standardization of regulations pertaining to mining operations" (id., at 133). Thus, only those laws that deal "with the actual operation and process of mining" are superseded (id., at 133).
The statute creating and empowering the APA is aimed at establishing a superagency to regulate development in the Adirondack Park region, which the Legislature has singled out for special protection because of its unique environmental significance (see, Executive Law § 801). The agency's powers and goals thus resemble those of both a local planning board and a local zoning entity (see, Wambat Realty Corp. v State of New York, 41 N.Y.2d 490, 491).
Inasmuch as the APA's mission concerns the broad area of land use planning within the Adirondack Park district, its enabling statute is not a law "relating to the extractive mining industry." Consequently, ECL 23-2703 (former [2]) does not deprive the agency of all jurisdiction to regulate petitioner's activities. Accordingly, petitioner's article 78 petition for relief in the nature of prohibition should have been dismissed and, to the extent that the courts below reached a contrary conclusion, their holdings were erroneous.
We note that, contrary to the dissenter's view, there is no "bureaucratic competition" or "confusion" over the respective roles of the APA and the DEC regarding the regulation of mining operations such as petitioner's that are located within the Adirondack Park. To the contrary, since 1976, the DEC and the APA, as well as the State Department of Health, have been party to a Memorandum of Understanding under which *910 the agencies have agreed to coordinate their respective regulatory responsibilities with regard to projects in the Park.
Finally, petitioner's request for a declaration that the APA has exceeded its authority by overstepping the boundaries established by ECL 23-2703 (former [2]) cannot now be entertained, because the request is premature. At this juncture, the agency has taken no steps to regulate petitioner's activities other than to insist that petitioner submit to its permit application procedures. There is thus no basis for evaluating whether the agency's regulation of petitioner's mining operation will affect that operation in more than merely "incidental" ways (see, Matter of Frew Run Gravel Prods. v Town of Carroll, supra, at 131). In the absence of a concrete controversy between the parties, petitioner cannot maintain an action for declaratory relief (see, e.g., Cuomo v Long Is. Light. Co., 71 N.Y.2d 349).
BELLACOSA, J. (dissenting).
I respectfully dissent for essentially the reasons expressed in Justice Casey's opinion (180 AD2d 157), and I would affirm the Appellate Division's order that the Adirondack Park Agency (APA) lacks jurisdiction with respect to petitioner's mining operation.
Notably, in enacting the Mined Land Reclamation Law (MLRL), the Legislature expressly superseded "all other state and local laws relating to the extractive mining industry," and reposed exclusive regulatory jurisdiction for such activities in the Department of Environmental Conservation (DEC) (ECL 23-2703 [former (2)]). A narrow exception to that supersession preserved local municipal zoning authority (Matter of Frew Run Gravel Prods. v Town of Carroll, 71 N.Y.2d 126). The exception should not be expanded to the vast and different APA regulatory net.
Local zoning entities and the APA are not alike in kind or in purpose. They also have a governance relationship to one another quite distinct from that of the State DEC to the State APA. Indeed, the APA's powers, in the context of this dispute, do not "resemble" those of local planning boards and zoning entities (majority mem, at 909). To treat them alike in this triangulated struggle, and thus create a much broader judicial exception to the statute, overrides the plain language and intent of the governing supersession directive and swallows the primary proposition.
Curiously, Wambat Realty Corp. v State of New York (41 N.Y.2d 490), cited to support the conclusion that local zoning *911 entities and the APA "resemble" one another, actually upheld APA powers over those of local planning and zoning entities on a supersession basis in the face of a home rule challenge. Wambat underscored the legislative intent, expressed in the APA Act, to "serve a supervening State concern transcending local interest * * * through a comprehensive land use and development plan" (41 NY2d, at 495, supra). There is no justification to use Frew Run (supra) to expand APA's comprehensive authority by trumping DEC's explicit supersession under the MLRL. The Legislature not only refrained from granting coordinate jurisdiction over mining operations to APA and DEC, it expressly conferred exclusive jurisdiction only on DEC.
Finally, the judicial inversion of the statute by the statutory interpretation in this case will engender unfair treatment, unequal application of the laws and bureaucratic competition that the Legislature plainly intended to avoid with its explicit supersession directive. It is no answer to these concerns that three bureaucratic behemoths executed an unfiled, unpublished and private compact of "coordination" among themselves. That cannot supersede the legislative distribution of powers to the agencies in the enactment of a public law. As the private memorandum itself, in any event, states, it "is not intended to diminish the authority or responsibility of any of the Agencies to act on matters with which it is charged" (Mem of Understanding of APA, DEC and Department of Health § II [A], as amended June 1980). The very consequence sought to have been avoided by the Legislature has actually unfolded in this case, where petitioner got a license from DEC in April 1988, modified by DEC in March 1989. This modified permit, which the Supreme Court found to be "still in full force and effect," appears to be ironically superseded by actions of the APA in June 1989, precipitating this lawsuit. The petitioner  as countless other regulated entities will find  obviously felt caught in bureaucratic crossfire and uncertainties; it assuredly finds no comfort in the "coordination" compact of the agencies. Contrary to an essential thrust of the statute, the net effect of the result and analysis in this case thus adversely affects the public interest and the interests of those individuals and entities which are subjected to redundant, red-tape procedures of overlapping regulatory agencies.
Order reversed, etc.
NOTES
[*] As amended in 1991, the statute now specifically excludes from its preemptive reach "local laws or ordinances of general applicability" that do not address regulated "mining and/or reclamation activities" and "local zoning ordinances or laws" governing permissible uses (ECL 23-2703 [2] [a], [b]). The statute also authorizes localities to attach certain listed conditions to special use permits issued to mining operations (id., [2] [b] [i]-[iv]).