Gabrielli, J.
The precise question presented is whether the New York State Urban Development Corporation (UDC) may plan and execute projects in disregard of local zoning laws. We answer the question in the affirmative.
Plaintiff, who purports to bring this action on behalf of himself and all others similarly situated, is the owner of conforming property nearby a proposed urban development project. The complaint seeks a declaration that the statute under which UDC purports to act (New York State Urban Development Corporation Act [L. 1968, ch. 174, as amd.]), is unconstitutional in that it is in conflict with the legislative powers of the Village of Ossining under the home rule provision of the New York Constitution (art. IX, § 2). Plaintiff alleges he *4 is a resident of the Village of Ossining in which UDC and Westchester Development Corporation are planning to develop a 12-acre parcel of real property known as the Banay property by providing facilities which, in size and in numbers of persons to be accommodated, will violate the village zoning ordinance which prohibits high-rise apartments, multiple dwellings and residences on lots of less than 7,500 square feet in the area affected.
It is argued that under the State Constitution’s “Bill of Rights for Local Government” (art. IX) local zoning laws cannot be disregarded in a situation of this kind, and our attention is called particularly to section 2 (subd. [b], par. [1]) of article IX which, in pertinent part, provides that local laws cannot be overridden except by ‘ ‘ enactment of a statute * * * in one calendar year and the re-enactment and approval of such statute in the following calendar year.” Since the statute relied on by UDC as giving it power to disregard local zoning laws (New York State Urban Development Corporation Act, § 16, subd. [3]), passed through only one legislative session, the contention follows that it is ineffective for the purpose intended; and, of course, it is also urged that this latter section, by its terms, does not state that zoning ordinances may be disregarded.
UDC argues, on the contrary, that article XVIII of the State Constitution creates the necessary authority for the contemplated project. That provision enabled the. Legislature to provide for State housing projects and pursuant to it UDC was created, the disputed section 16 (subd. [3]) being incorporated into this legislative package. Additionally, it is argued that the terms of that statute specifically contemplate the override of local zoning ordinances.
The Appellate Division, by a closely divided court, affirmed a Trial Term grant of summary judgment in favor of UDC, the dissenters holding that the language of the section refers exclusively to UDC’s power to deviate from local laws only as to the use of materials, processes and the like, but that there was an absence of power or authority to override zoning laws. Appellant reasons that the following language of the questioned section substantiates his position: “(3) After consultation with local officials, as provided in subdivision one of this *5 section, the corporation and any subsidiary thereof shall, in constructing, reconstructing, rehabilitating, altering or improving any project, comply with the requirements of local laws, ordinances, codes, charters or regulations applicable to such construction, reconstruction, rehabilitation, alteration or improvement, provided however, that when, in the discretion of the corporation, such compliance is not feasible or practicable, the corporation and any subsidiary thereof shall comply with the requirements of the state building construction code, formulated by the state building code council pursuant to article eighteen of the executive law, applicable to such construction, reconstruction, rehabilitation, alteration or improvement.”
However, the crux of the issue presented is found in further language of the section which states that: “nor shall any municipality have power to require the corporation or any subsidiary thereof, or lessee therefrom or successor in interest thereto, to obtain any other or additional authority, approval, permit, certificate or certificate of occupancy from such municipality as a condition of owning, using, maintaining, operating or occupying any project acquired, constructed, reconstructed, rehabilitated, altered or improved by the corporation or by any subsidiary thereof. The foregoing provisions shall not preclude any municipality from exercising the right of inspection for the purpose of requiring compliance by any such project with local requirements for operation and maintenance, affecting the health, safety and welfare of the occupants thereof, provided, however, that such compliance does not require changes, modifications or additions to the original construction of such project.”
The first quoted part of the statute deals with constructing, reconstructing, rehabilitating, altering and improving and says that TJDC need not comply with local requirements if thought unwise, but that at least the State building code should be followed in any event. When taken with the second above-quoted portion of the statute relieving TJDC of virtually all local controls, it seems manifest that the Legislature, in reciting the words “ constructed, reconstructed, rehabilitated, etc.”, did not have only building code regulations in mind. The only reason for the explicit reference to the State building *6 code is because there is one. There is no State zoning code.
It would be too narrow an interpretation to say that construction, reconstruction, etc., did not contemplate zoning. The Legislature itself rather clearly construes the provision as applicable to zoning. During the 1972 session a bill passed both houses providing that “ the corporation shall not initiate any project in any municipality until and unless such project complies. with the zoning ordinances and regulations of the applicable municipality” (Assembly Bill No. 650). In his report vetoing the bill, the Governor stated: ‘ ‘ The TJDC and the UDRC [Urban Development and Research Corporation] were created in 1968 to help solve critical problems confronting the State and its municipalities * * * The two corporations were given the power to 1 override ’ local zoning ordinances and regulations in order to overcome restrictive local standards that have often impeded urgently needed development or have rendered it prohibitively expensive. This grant of power reaffirmed the traditional immunity that instrumentalities of the State have enjoyed when carrying out State purposes.” (N. Y. Legis. Annual, 1972, p. 448.)
The inescapable conclusion from this is that both the executive and the legislative branches consider that UDC is presently exempt from local zoning and they are wrangling over whether this should be changed.
Article IX is expressly made subject to other provisions of the State Constitution, and section 3 of article IX provides that “ [ejxcept as expressly provided, nothing in this article shall restrict or impair any power of the legislature in relation to * * * Matters other than the property, affairs or government of a local government.” A general law such as section 16 (subd.'[3]), applicable to all municipalities, cannot be construed as a law designed to be disruptive of the property or affairs “of a local government.” The two-legislative-session approval provision (N. Y. Const., art. IX, § 2, subd. [b], par. [1]) reasonably applies only where a special act, disruptive of the powers of a particular municipality, is involved. This is rather firmly established by our holdings in City of New York v. State of New York (31 N Y 2d 804) and Matter of Freedman v. Suffolk County Bd. of Supervisors (25 N Y 2d 873).
*7 Housing is a matter of State-wide concern (City of New York v. State of New York, supra; Adler v. Deegan, 251 N. Y. 467); and since the statute under attack, being general in nature, affects housing, it follows that local laws otherwise in conflict may not inhibit the operation of general laws (Adler v. Deegan, supra). Actually, UDC’s powers stem from the State Constitution itself, article XVIII of which establishes the legislative power to create such an agency in order to alleviate the housing problem throughout the State in the interests of general health, safety and welfare; and hence, there is no constitutional infirmity in either the creation of TJDC or its right to override local zoning laws.
The order of the Appellate Division should be affirmed.
Chief Judge Fuld and Judges Burke, Brbitel, Jasen, Jones and Wachtler concur.
Order affirmed, without costs.