OPINION OF THE COURT
Edward H. Lehner, J.
The issue presented here is whether the residential occupancy by a shareholder of a corporation that operates a hat factory results in covered occupancy under article 7-C of the Multiple Dwelling Law (the Loft Law) where the space used for residential purposes is less than 2% of the floor space rented by the corporation.
This is a holdover proceeding instituted against Aky Hat Corp. (Aky) to recover possession of the entire 10th floor at 49 West 27th Street. Aky had entered into possession under a lease for a 5-year term commencing July 1, 1978. The lease provided that the premises may be used only for the “import and manufacture of hats.” At the expiration of the term Aky held over and was subsequently served with a 30-day notice calling for it to vacate by September 30, 1983. When it failed to vacate this proceeding was commenced. An answer was interposed only by C. S. Chou (Chou) and his brother, Paul Chou, who claimed the right to possession pursuant to the Loft Law. At trial the answer of Paul Chou was withdrawn and Aky was deemed to have joined in the answer. However, it was conceded by respon *441 dents’ counsel that any right to possession of Aky was based solely on the right of Chou to remain under the Loft Law.
Aky, which is in the business of manufacturing hats, also occupies space on the ninth floor of the subject building. A separate holdover proceeding with respect to that floor (L&T 90730/83) was stayed by the undersigned by order dated November 4,1983 because coverage under the Loft Law had been claimed by Paul Chou with respect to that floor and a hearing at the Loft Board (the Board) was imminent with respect to the claim. The application to stay this proceeding was denied as Paul Chou’s application to the Board showed that the 10th floor was used for commercial purposes. At trial respondents introduced a letter sent to the Board by counsel in which that application was amended to claim that “Paul Chou” and his family occupy a residential loft on the 9th and 10th floors.”
Although the Appellate Term, in a decision published after the conclusion of the trial (Korn v Meislin, NYLJ, Feb. 17, 1984, p 6, col 3), has strongly suggested that where a determination of interim multiple dwelling (IMD) status involves “[c]omplex questions of mixed law and fact” the primary determination should be made by the Board, here there is no dispute that the building is in fact an IMD, and the issue of coverage is a matter of statutory interpretation from an essentially undisputed state of facts.
The testimony showed that the dimensions of the building plot are 100 feet by 98 feet. Although there was a conflict as to the usable space on the floor, the court concludes that such space totaled approximately 7,500 square feet. The room which has been occupied by Chou since 1978 for living purposes was stated by petitioner’s witness to be 9 feet by 8 feet. No contrary testimony was offered by respondents with respect to size. Said room, which is partitioned but has no door, contains a single bed, a sofa and a desk.
Mr. Chou testified that: he came to the United States in October, 1977 for a visit, but has remained here since, working in the Aky hat factory as a supervisor; his wife and children reside in Taiwan; he is a vice-president of Aky and although his brother owns most of the shares, he also *442 owned some shares, but could not state how many. However, the 1981 Federal income tax return of Aky did not show Chou as an officer, nor a shareholder owning more than 5% of the outstanding shares.
In addition to the room where he sleeps, Chou claimed he also uses, as part of his residential space, the bathroom adjacent to the bedroom (which is of the same size as the bedroom) and a kitchen. However, the testimony of a salesman called by respondents showed that the space that Chou claimed as his kitchen consists of a large table (immediately adjacent to the work area) where the employees ate lunch, an “oversized refrigerator” used by them, and a stove.
The testimony indicated that: there are approximately 8 to 10 full-time employees working on the floor engaged in the manufacture of hats; there are numerous machines located throughout; space is partitioned for Aky’s offices; and that hats are stored in piles in all areas, including that immediately adjacent to the so-called kitchen. Chou’s name is not listed on the door, the only name thereon being that of Aky, and he pays no rent. To reach Chou’s bedroom one must walk through the factory, there being no separate entrance.
Factually it thus appears that Chou moved into and lives in a hat factory. The kitchen, being the area used during the workday by the factory employees (as well as Chou) to eat their meals, may not be considered as part of a residence. If such area were included, it would seem that the space where the cutting tables are located would also have to be counted if Chou used the tables for reading or writing purposes. Although Chou has complete use of the factory at night and during weekends when it is not in operation, such space cannot be deemed residentially occupied. The only space that is truly residential and contains the type of furniture and equipment generally associated with residential living is the bedroom containing 72 square feet, and a bathroom of equal size. Thus, the total space that is used for residential purposes is 144 square feet, which is slightly less than 2% of the total usable floor area rented to Aky.
*443 Respondents maintain that the amount of space used for residential purposes is irrelevant as the Loft Law (Multiple Dwelling Law, art 7-C, § 280 et seq.) does not require that a protected occupant live in a certain percentage of the space. In support they cite the Board’s decision in Matter of William Muschel, Inc. (Loft Board order No. 33) where the landlord claimed that 75% of the space was used for business purposes. In its opinion finding Loft Law coverage, the Board stated: “There is nothing in Article 7-C which requires that a unit be strictly residential in order to be covered. Indeed, the opposite conclusion must be drawn.”
Respondents correctly point out that under section 281 of the Multiple Dwelling Law, a building is an IMD if it (a) was occupied at any time for manufacturing, commercial or warehouse purposes; (b) lacks a certificate of occupancy for residential use; (c) on December 1, 1981 was occupied for residential purposes since April 1, 1980 as the residential home of any three or more families living independently; and (d) is located in a geographical area in which the local zoning resolution permits residential use as of right or by minor modification or administrative certification by a local planning agency.
There seems little question that under a literal reading of the definitional section of the Loft Law that Chou would be covered as his only residence since 1978 has been on the 10th floor, he has filed an application to permit his residential use with the City Planning Commission, and it is conceded that the building is an IMD by reason of other residential occupancies.
The court must now determine whether the law does in fact provide protection to Chou, and whether Aky can bootstrap continued regulated occupancy based on Chou’s residence.
General rules governing statutory interpretation were set forth in Abood v Hospital Ambulance Serv. (30 NY2d 295, 298), where it was said: “In construing statutory provisions, the purpose of the statute and the objectives sought to be accomplished by the Legislature must be borne in mind * * * While it is true that, whenever the language of a statute is clear and unambiguous, we are required under ordinary rules of construction to give effect *444 to its plain meaning * * * the literal language of the statute, where it does not express the statute’s manifest intent and purpose, need not be adhered to.”
The enactment of the Loft Law was the result of the prior chaotic state of the rules regulating loft living. (See Corris v 129 Front Co., 85 AD2d 176; Lipkis v Pikus, 99 Misc 2d 518, affd 72 AD2d 697; Mandel v Pitkowsky, 102 Misc 2d 478, affd 76 AD2d 807.) Owners are now granted the right to collect rent from tenants of space being occupied illegally for residential purposes. In return, landlords are required to bring their buildings into code compliance within specified periods. The law was necessarily a compromise between bitterly conflicting interests. Although there is much controversy with respect to this new law, it is generally agreed that it is not a paragon of clear legislative draftsmanship. The law is now, and will undoubtedly be in the years to come, the subject of much litigation with respect to its interpretation.
If the respondents’ position were to prevail, Aky would obtain the benefits of rent and eviction protection. No matter how salutary commercial rent regulation may be in this day of escalating rents for small businesses, such regulation was certainly not one of the purposes of the Loft Law.
Here the problem the Legislature sought to deal with can be partially garnered from its findings set forth in section 280 of the Multiple Dwelling Law where it is stated that an “emergency has been created by the increasing number of conversions of commercial and manufacturing loft buildings to residential use”. A similar finding is contained in the moratorium legislation of 1980 (L1980, ch 889).
The court concludes that the purpose of the statute was to regulate the occupancy of space converted from nonresidential to residential use, and to encourage landlords to bring converted occupancies into code and zoning compliance.
Here no conversion occurred. What took place was that a brother of the owner of Aky moved into a small room in the factory. Even if Chou owned more than 5% of the stock of Aky (which Aky’s tax return indicates he does not), the *445 result should not be different. The framework of the statute is not designed to cover the situation present at bar. The landlord cannot, as a consequence of Chou’s residence, be required to make the 10th floor (full of factory machinery, equipment and merchandise) comply with residential living requirements. Further, Chou has no rental arrangement with anyone with respect to his occupancy except that his brother permits him to live there.
The above-mentioned decision of the Board in Matter of William Muschel, Inc. showed a different fact pattern as there significant residential equipment had been installed, with the lofts being used for dance studios. To the extent that the Board’s opinion can be interpreted to hold that no matter how little space is occupied for residential purposes in an IMD, there is coverage, the court disagrees. The facts of this case illustrate the need to examine the nature of the residential and commercial uses before determining coverage.
In conclusion, the court holds that here there was in fact no conversion of manufacturing or commercial use to residential living as to warrant coverage under the Loft Law. Merely setting aside a very small space in which an employee (even though an equity owner) may live does not bring the employee within the group of loft dwellers sought to be protected by the statute.
Accordingly, since Chou is not entitled to protection under the law, petitioner is entitled to a final judgment of possession against Aky Hat Corp. and Chih Hsioung Chou (Chou’s full name). The issuance of the warrant shall be stayed for a period of 30 days from the date hereof. On consent the claim for use and occupancy was severed. The claim for attorney’s fees is denied as landlord has failed to demonstrate the existence of a clause in the lease calling for the payment of such fees in connection with a holding over after the expiration of term.