OPINION OF THE COURT
Lewis R. Friedman, J.
This nonpayment proceeding involves premises which are registered as an interim multiple dwelling pursuant to the Loft Law (Multiple Dwelling Law art 7-C). Article 7-C was enacted in 1982 (L 1982, ch 349), inter alia, to bring order to the chaotic rules governing lofts, to remove uncertainty in the status of loft tenants, and to regulate landlord-tenant relationships while the premises were brought into compliance with code and zoning requirements. (Multiple Dwelling Law § 280; Loft Realty Co. v Aky Hat Corp., 123 Misc 2d 440.) The statute, a compromise effort to deal with " 'interim multiple dwellings’ ” (Multiple Dwelling Law § 281 [1]), provides a *92 timetable for conversion and legalization (Multiple Dwelling Law § 284 [1]) and protections for both tenants (Multiple Dwelling Law § 286) and owners (Multiple Dwelling Law § 285). Section 285 (1) provides, in pertinent part: "Notwithstanding the provisions of section three hundred two or three hundred twenty-five of this chapter, the owner of an interim multiple dwelling may recover rent payable from residential occupants qualified for the protection of this article * * * and maintain an action or proceeding for possession of such premises for non-payment of rent, provided that he is in compliance with this article. ” (Emphasis added.) The italicized phrase has not been explained in the reported cases. Must the owner merely register the interim multiple dwelling with the Loft Board or must it allege compliance with the substantive legalization provisions as well?
Respondents here move for summary judgment, asserting, inter alia, that there is a jurisdictional defect in the petition in that it fails adequately to allege compliance with the Loft Law. Petitioner cross-moves for leave to amend.
A brief review of the Loft Law puts the issue into context. Prior to 1982 the Multiple Dwelling Law had two impediments to a landlord’s commencement of summary proceeding for nonpayment of rent loft cases: sections 302 and 325. Section 302 (1) (b) prohibits nonpayment proceedings in multiple dwellings where there is no valid certificate of occupancy; section 325 similarly requires a valid multiple dwelling registration statement. Residential use by three or more families makes a building a multiple dwelling (Multiple Dwelling Law § 4 [7]). In the typical loft setting, the residential use violates the certificate of occupancy; the owner is, therefore, barred by Multiple Dwelling Law § 302 from bringing a proceeding to recover rent. Also, since the residential use is "illegal”, the building cannot be registered as a multiple dwelling with the Department of Housing Preservation and Development; a proceeding to recover rent is barred by Multiple Dwelling Law § 325 (2) and Administrative Code of the City of New York § 27-2107 (b) (formerly § D26-41.21 [b]). (See, Mandel v Pitkowsky, 102 Misc 2d 478 [App Term, 1st Dept 1979].)
The Loft Board, the administrative agency which regulates lofts and the conversion process (Multiple Dwelling Law § 282), in January 1983 adopted a regulation holding that registration alone was sufficient to meet the article 7-C "compliance” requirement of Multiple Dwelling Law § 285 (1) and *93 to allow a proceeding to collect rent. That regulation was invalidated.
"Section 285 (1) of Article 7-C creates an exception to the barriers of sections 302 and 325 where the owner is in full compliance with Article 7-C.
"In so far as the regulations at issue waive the statutory prerequisites of section 285 (1), it is contrary to law and invalid.” (Lower Manhattan Loft Tenants v New York City Loft Bd., NYLJ, Aug. 15, 1984, at 11, cols 1, 3 [Sup Ct, NY County].) No appeal was taken by the Loft Board.
To the contrary, the Appellate Term, First Department, has held that only registration is required. In 291 7th Realty Assocs. v Shattuck (NYLJ, Mar. 5, 1986, at 6, col 1) the court found that an affirmative defense that pleaded a failure "to allege with adequate particularity that it is in compliance with Article 7C of the MDL” should be stricken since registration with the Loft Board was alleged.
The issue was recently considered by the Court of Appeals in Matter of Blackgold Realty Corp. v Milne (69 NY2d 719 [1987]). That decision, however, leaves open as many questions as it answers. The court held the nonpayment petitions "jurisdictionally defective * * * Inasmuch as the landlord failed to allege compliance with the Loft Law’s 'owner obligations’ (see, Multiple Dwelling Law § 284 [2]), it is not entitled to rely on the Loft Law’s statutory exemption from the jurisdictional predicate of multiple dwelling registration (see, Multiple Dwelling Law § 285 [1]).” (Supra, at 721.) A review of the record on appeal in Blackgold shows that the petitioner had properly pleaded registration with the Loft Board.* The decision can, therefore, be read to require complete compliance with Multiple Dwelling Law article 7-C. The reference to "owner obligations” is apparently to the title of Multiple Dwelling Law § 284 which contains subsections on both legalization and registration. On the other hand, the court cites only Multiple Dwelling Law § 284 (2), which relates to registration. Further, the court referred to sections requiring mul *94 tiple dwelling registration and pleading of that registration. The ambiguity of the holding may well be the result of the court’s sua sponte decision of an issue which was neither briefed nor argued. Yet, this court must apply the holding to the case at bar.
The petition here is essentially identical to that in Blackgold. (See, n, supra.) The court concludes that in Blackgold the Court of Appeals held that compliance with all of the requirements of article 7-C is mandated in order to avoid the multiple dwelling registration requirements of Multiple Dwelling Law § 325. It is not unreasonable to require an owner to allege compliance with the legalization standards, which include fire and safety requirements, particularly when more than five years have passed since the statute was passed. Two recent unreported decisions, by Judges Cohen and Goldman, have reached the same result. (Mansion v Menking, Civ Ct, NY County, L&T 81982/86; Dundee Equity Corp. v Harmon, Civ Ct, NY County, L&T 47006/85.)
A requirement that all of article 7-C be complied with is consistent with the language of Multiple Dwelling Law § 285 (1), which requires "compliance with this article” in order to avoid the prohibitions of Multiple Dwelling Law §§ 302 and 325; the statute nowhere indicates that only partial compliance is sufficient. This conclusion is also consistent with the main purpose of the Loft Law — to make loft’s code compliant according to a strict timetable. An alteration application had to be filed by March 1983, permits had to be obtained by June 1983, fire and safety protection, as defined in Multiple Dwelling Law article 7-B, had to be completed within 18 months of the permit or December 1983, and a residential certificate of occupancy had to be obtained by June 1986 (Multiple Dwelling Law § 284 [1]).
Petitioner seeks leave to amend the petition to plead compliance with article 7-C. The moving papers annex an alteration application filed by the owner’s predecessor in title six months before the Loft Law was passed. That application has not been acted on. Petitioner also annexes a 1987 application for a somewhat different alteration. The court cannot conclude that the owner took "all reasonable and necessary action to obtain an approved alteration permit” under the 1981 application; nothing was done for nearly six years while the papers were, allegedly, "lost” by the Department of Buildings or, alternatively, were sent to the Board of Standards and Appeals (BSA). Petitioner asserts that action on the 1981 BSA *95 application was delayed because of inadequate information, which it blames on the tenants. There is no proof of the nature or status of the BSA application. Without a doubt a residential certificate of occupancy has not been issued; the Loft Board has not extended petitioner’s time to obtain one.
The papers present no issue of fact requiring a trial; petitioner is not in compliance with article 7-C even if it had properly pleaded compliance with all of its requirements. The burden of pleading and proving compliance with article 7-C is on the owner. There is no need to permit an amendment to a pleading when petitioner asserts no facts upon which it can ultimately prevail.
The motion for summary judgment dismissing the petition is granted; the cross motion to amend is denied.

 Petitioner here argues that in Matter of Blackgold Realty Corp. v Milne (69 NY2d 719 [1987]) the Loft Board had issued a registration number during the pendency of the proceeding rather than prior to its filing (see, Blackgold Realty Corp. v Milne, 119 AD2d 512). However, well-established law allows the amendment of registration information during the proceeding. Jocar Realty Co. v Rukavina (130 Misc 2d 1009, 1010) which held that trial proof could not form a basis for amendment was rejected on that ground. (Jocar Realty Co. v Rukavina, 137 Misc 2d 1045 [App Term, 1st Dept].)