OPINION OF THE COURT
Lewis R. Friedman, J.
In 1982 (L 1982, ch 349), New York adopted Multiple Dwelling Law article 7-C (the Loft Law) in a comprehensive effort to regulate and "legalize” the large numbers of lofts in commercial and manufacturing districts which had been illegally converted to residential use and did not comply with the Building Code, Multiple Dwelling Law, or statutes and rules governing minimum housing standards (Multiple Dwelling *839 Law § 280). The Loft Law brought order to the chaotic regime that governed lofts and, inter alia, regulated landlord-tenant relationships while premises were brought into compliance with code and zoning requirements (see, Cobra Resources v Dumpl, Inc., 138 Misc 2d 91; Loft Realty Co. v Aky Hat Corp., 123 Misc 2d 440). "[I]n a city of more than one million persons” (Multiple Dwelling Law § 281 [1]), "interim multiple dwellings” (IMD’s) (the legislative term for protected facilities) must be capable of complying with the local zoning law. That is, IMD’s may only be buildings or portions of buildings located in areas "in which the local zoning resolution permits residential use as of right, or by minor modification or administrative certification of a local planning agency” or "which may be converted to residential use pursuant to a special permit granted by a local planning agency” (Multiple Dwelling Law § 281 [2]).
Many residential lofts were denied IMD status because they were located in zoning areas where residential use was prohibited or because special permits had been denied. In 1987 the Legislature amended the Loft Law (L 1987, ch 466) in an effort to remedy that situation. Section 281 (4), added to the Loft Law by that amendment, provides that buildings which were residentially occupied for a certain period do not have to comply with local zoning requirements, as otherwise required by section 281 (2). The issue presented by this case is whether chapter 466 was validly adopted by the Legislature, in light of the home rule provisions of the New York Constitution.
THE FACT OF THE CASE
Petitioner is the owner of the loft building at 57-63 Greene Street in Manhattan. Respondent is a residential tenant of one of the second-floor lofts. The building is registered as an IMD with the Loft Board, the agency created by the Loft Law to regulate the conversion process. Since the building is an IMD, petitioner is obligated to legalize the residential units by, inter alia, obtaining a Department of Buildings (DOB) alteration permit and, ultimately, a residential certificate of occupancy in compliance with the Multiple Dwelling Law, Building Code and Zoning Resolution (ZR) (see, Multiple Dwelling Law §§ 280, 281 [1], [2]; § 284 [1]; Cobra Resources v Dumpl, Inc., 138 Misc 2d 91, supra). The building is in an MI-SA zone, which permits residential use for "joint living-work quarters for artists” only if a special permit is issued by the *840 City Planning Commission (CPC) (ZR §§ 74-782, 42-14 [D]; § 12-10). Petitioner’s predecessor applied to the CPC for the special permit and to DOB for an alteration permit to authorize the legalization of the residential lofts. The CPC recommended the special permit for 13 of the 19 residential lofts in the building; respondent’s loft was excluded. The Board of Estimate adopted that recommendation. The alteration application was revised to reflect the CPC determination; the Loft Board certified the revision, pursuant to section IV (B) (7) (a) of the New York City Loft Board Regulations (Relating to Timing and Performance of Code Compliance Work), and DOB has issued an alteration permit.
Respondent has been a residential tenant since 1976; his last lease expired on June 30, 1988. This holdover proceeding was brought by petitioner solely on the ground that respondent remained in possession beyond the expiration of his lease. Respondent moves to dismiss for failure to state a cause of action since he claims that he is a protected tenant under the Loft Law, as amended by chapter 466. Petitioner cross-moves for summary judgment[1] on the ground that there are not disputed issues of fact and that chapter 466 was enacted in violation of the State Constitution.
The parties agree that there are no disputed issues of material fact; they differ only on the validity of chapter 466. Since respondent raises no procedural or factual issues in response to the summary judgment motion, petitioner is entitled to a judgment of possession unless respondent is "covered” by the Loft Law. The "coverage” of respondent’s portion of the building terminated when the CPC denied the special permit (Multiple Dwelling Law § 281 [2]; New York City Loft Bd Regs [Relating to Determination of Interim Multiple Dwelling Status] § I [A] [2]; [E] [4] [d]). On the other hand, as a "covered” tenant he would not be subject to eviction solely because his lease had expired (Multiple Dwelling Law § 286 [2]). Moreover, if respondent is "covered” by the Loft Law, the petition is facially defective (see, Cobra Resources v Dumpl, Inc., 138 Misc 2d 91, supra; Matter of Blackgold Realty Corp. v Milne, 69 NY2d 719). However, under the undisputed facts *841 respondent would qualify for "coverage” pursuant to the chapter 466 amendments. Thus, the only issue to be decided is whether chapter 466 was validly adopted.
The court notified the Attorney-General in writing of the proceeding, pursuant to CPLR 1012, offering an opportunity for intervention. The Attorney-General wrote to the court and declined to intervene on the ground of "lack of resources.” He noted that the issue of the constitutionality of chapter 466 was presented in a declaratory judgment action, commenced in July 1988, pending in Supreme Court, New York County (City of New York v State of New York, index No. 44141/88). The Attorney-General’s letter "suggested” that this court stay the proceeding to await the outcome of the declaratory judgment action. This court declines to follow that "suggestion”. First, since the Attorney-General chose not to intervene as a party, he has no standing to "suggest” a stay of the proceeding; the “suggestion” should not even be considered. Second, the parties before the court are entitled to an expeditious determination of their rights in this "summary proceeding”. The court has been advised that as of the date of this opinion, the declaratory judgment action has proceeded no further than the service of the answer. Thus, no decision will be forthcoming in the foreseeable future. Third, the parties here have submitted thoughtful, comprehensive briefs on the statutory and constitutional issues presented and little would be gained by waiting. Finally, the other action also involves the constitutionality of portions of chapter 466 which are not involved here;[2] chapter 466 contains a separability section.
ABSENCE OF A HOME RULE MESSAGE
Petitioner contends that chapter 466 is a "special law” that affects the "property, affairs or government” of New York City. No "home-rule message” was adopted by the City of New York. Petitioner concludes that chapter 466 violates NY Constitution, article IX, § 2 (b) (2).
The court starts its analysis with the oft-repeated "presumption that an act of the Legislature is constitutional and this presumption can be upset only by proof persuasive beyond a *842 reasonable doubt” (Hotel Dorset Co. v Trust for Cultural Resources, 46 NY2d 358, 370; Montgomery v Daniels, 38 NY2d 41, 54; Matter of Malpica-Orsini, 36 NY2d 568, 570). The court must also presume that the Legislature has made sufficient inquiry to find the facts necessary to support the legislation as well as the need or desirability for the action (I. L. F. Y. Co. v Temporary State Hous. Rent Commn., 10 NY2d 263, 270, appeal dismissed 369 US 795; Matter of Van Berkel v Power, 16 NY2d 37, 40; Hotel Dorset Co. v Trust for Cultural Resources, supra, 46 NY2d, at 370). Those presumptions are not overcome here. The court cannot find "such a clear usurpation by the Legislature of prohibited power as must be found before a statute can be pronounced unconstitutional and void” (Matter of Ricker v Village of Hempstead, 290 NY 1, 5).
The threshold question is whether chapter 466 affects the "property, affairs or government” of the city. The phrase "property, affairs or government” has been part of the home rule article of the Constitution since 1894 (see, NY Const of 1894, art XII, § 2) but was used even earlier. The principle emerging from the cases interpreting that phrase is that where, "to a substantial degree, in depth or extent, a matter of State concern is involved” the State may legislate even though local concerns are also touched upon (see, e.g., Wambat Realty Corp. v State of New York, 41 NY2d 490, 494). "However, the words 'property, affairs or government’ have a narrow significance” (County Sec. v Seacord, 278 NY 34, 38). As long as the subject matter was "of sufficient importance to the State, transcendent of local or parochial interests or concerns” State legislation has been held not to violate the home rule provisions of the Constitution. (Wambat Realty Corp. v State of New York, supra, at 494.) Various "State” concerns have been found to be sufficient (e.g., Hotel Dorset Co. v Trust for Cultural Resources, supra, 46 NY2d, at 372-373 [preservation of cultural affairs]; Wambat Realty Corp. v State of New York, supra, 41 NY2d, at 494-495 [environmental conditions in Adirondack Park]; Floyd v New York State Urban Dev. Corp., 33 NY2d 1, 7 [expanded housing]; Bugeja v City of New York, 24 AD2d 151, 152, affd 17 NY2d 606 [civil service pensions]; Adler v Deegan, 251 NY 467, 477-478 [public health]).
In one of the seminal cases under the home rule article (Adler v Deegan, 251 NY 467, supra), the court upheld the enactment, without a home rule message, of the entire Multiple Dwelling Law, which was applicable only to New York *843 City. Substandard housing conditions were found by the court to be a matter of concern to all the citizens of the State and, therefore, did not come within the narrow confines of the "property, affairs or government” of New York City. Here, the State-wide importance of the issues involved in housing-standard enforcement is apparent in the Loft Law itself. The law is to protect the public health, safety and general welfare by providing for the "Legalization” of dwellings that did not meet minimum health, safety and fire standards (Multiple Dwelling Law § 280; see, Spring Realty Co. v New York City Loft Bd., 69 NY2d 657, appeal dismissed 482 US 911). The City of New York proposed the Loft Law, including all of its details; indeed, the city had prepared for its passage by the amendment of the Zoning Resolution one year earlier, April 9, 1981 (see, letter of Mayor Edward I. Koch to Gov, June 10, 1982, Bill Jacket, L 1982, ch 349). The memorandum of the city in support of the Loft Law shows the importance it placed on the safe conversion of illegal lofts and its conclusion that State legislation, applicable to cities of more than one million persons, was the appropriate vehicle. Yet, the Loft Law itself was proposed by New York City, without a home rule message.
There is little doubt, therefore, that the Loft Law does not affect the "property, affairs or government” of New York City. Chapter 466 does noting more than amend that law, albeit in a material respect, and is applicable only to a relatively small number of lofts, 200 to 300 (see, letters of lower Manhattan loft tenants to Gov, July 17, 1987; Jeffery S. Ween, Esq., to Gov, July 13, 1987; Mayor Edward I. Koch to Gov, July 21, 1987, at 4; mem in support from Brooklyn loft tenants, Bill Jacket, L 1987, ch 466). The amendment conforms with one of the original goals of the Loft Law — legalizing the residential use of premises most often occupied by artists, a proper State legislative purpose (Hotel Dorset Co. v Trust for Cultural Resources, supra, 46 NY2d, at 373).
Petitioner argues that chapter 466 is a "special law” within the meaning of NY Constitution article IX. Under article IX a "special law” is: "A law which in terms and in effect applies to one or more, but not all, counties, counties other than those wholly included within a city, cities, towns or villages” (NY Const, art IX, § 3 [d] [4]). Only "special laws” require home rule messages.
The Court of Appeals has concluded that the application of a law to a class of municipalities will be upheld as a general *844 law unless there is the strongest proof that the law applies only to a single private or local interest and that there is no rational basis for that limitation. Thus, the court has long held that a statute which by its terms applies only to cities with a population exceeding one million, and, therefore, is only applicable to New York City, is not a "special law” under the home rule article (see, Matter of McAneny v Board of Estimate & Apportionment, 232 NY 377, 392-393; Admiral Realty Co. v City of New York, 206 NY 110, 139-140; Matter of Church, 92 NY 1, 5; People v Dunn, 157 NY 528, 540; cf., Farrington v Pinckney, 1 NY2d 74, 83-85).
Three cases in the past century have found a law, expressed in general terms, to be a "special law”. However, it appears that, at least in recent times, those cases have been so distinguished that they are sui generis. In Matter of Henneberger (155 NY 420, 424-427) the court invalidated a law which applied only to one road in New Rochelle. "[T]o call this act a general law would be absurd” (155 NY, at 427). Yet, the test proposed in Henneberger, the application of the "spirit” of the act, has rarely been used since that time. In Matter of Mayor of City of N. Y. (Elm St.) (246 NY 72, 77-78) the court invalidated a law which revived claims in condemnation cases which had been barred by the Statute of Limitations; the terms of the law were general but apparently applied to only one claimant. The operative acts had all occurred so that no future person could become a member of the class affected. As Chief Judge Cardozo noted, "[w]e close our eyes to realities if we do not see in this act the marks of legislation that is special and local in terms and in effect.” (246 NY, at 77-78.) In Stapleton v Pinckney (293 NY 330, 334-336) the court invalidated a statute that related to selection of jurors in counties with populations of from 200,000 to 250,000 which contained a city of at least 125,000 population. Only Albany County fit that description. Chief Judge Lehman wrote that the general language of the act was insufficient because the conditions "have no reasonable relation to the subject. In such case there is in truth no 'class’ created but merely identifying marks of the locality or localities for which the Legislature is enacting a special law” (at 335). The population of the county had "no apparent relation to the basis of the classification” (at 336).
The Court of Appeals recent citation of those three cases leads to the conclusion that they are of little precedential value. Thus, the court had little difficulty in finding that the State Cultural Resources Act and New York City Cultural *845 Resources Act (General Municipal Law arts 13-E, 13-F) were not "special laws”. The laws apply to cultural institutions which held fee title to tax-exempt real property in excess of 50,000 square feet for a period of a least five years and, if in a city with a population of more that one million, must have had average annual admission of at least 500,000 persons for a period of at least five years, or, if in a city of at least 125,000, at least 50,000 admissions for at least five years. Essentially, the acts gave tax benefits solely to the Museum of Modern Art in New York City. Yet, the court noted that "[w]here, as here, the method of providing aid has an equal impact on all members of a rationally defined class similarly situated, the law is thus a general and not a special one” (Hotel Dorset Co. v Trust for Cultural Resources, supra, 46 NY2d, at 373; cf., Wein v Beame, 43 NY2d 326, 331). The majority noted that the cases such as Matter of Mayor of City of N. Y. (Elm St.) (supra) finding laws to be "special” laws were "rare instances” (at 373). This is not one of those rare instances.
The court notes that although the City of New York, through the Mayor,[3] opposed the passage of chapter 466, it did not oppose it on constitutional grounds. Thus, the Mayor’s lengthy letter of opposition takes issue with the propriety of the Legislature’s intervention in matters of city zoning, but at no time contends that a home rule message was required (letter of Edward I. Koch to Gov, at 2-3, July 21, 1987, Bill Jacket, L 1987, ch 466). While the letter is not dispositive, it is hard for this court to conclude that there was such a major intrusion into the affairs of the city to require invalidation of the act if the city did not even raise the issue at the appropriate time.
The court finds that chapter 466 does not require a home rule message.
DOUBLE SESSION PASSAGE
Petitioner also argues that chapter 466 violates NY Constitution, article IX, § 2 (b) (1) because it was not passed by the Legislature in two successive calendar years. The 1963 home rule amendment to the Constitution provides that certain powers, in addition to those specifically enumerated in article IX, could be granted to localities by statute. The Statute of Local Governments, enacted pursuant to that authority, at *846 section 10 (6), specifically includes the power to adopt, amend and repeal zoning regulations. Under the Constitution, powers granted by the Statute of Local Governments can only be “repealed, diminished, impaired or suspended” by a law adopted by the Legislature in regular session in one calendar year, approved by the Governor, and then reenacted and approved the following calendar year. (NY Const, art IX, § 2 [b] [1].) The question then is whether chapter 466, which was adopted only in 1987, unconstitutionally restricted the Zoning Resolution adopted by New York City.
The Court of Appeals has held that the “two-legislative-session approval provision * * * reasonably applies only where a special act, disruptive of the powers of a particular municipality, is involved” (Floyd v New York State Urban Dev. Corp., 33 NY2d 1, 6, supra; City of New York v State of New York, 67 Misc 2d 513, 514-515, affd 31 NY2d 804; Matter of Freedman v Suffolk County Bd. of Supervisors, 25 NY2d 873). As noted above, chapter 466 is not a "special law” and does not disrupt the powers of a particular municipality.
Clearly, the State may affect local zoning laws without following the double enactment procedure (Wambat Realty Corp. v State of New York, 41 NY2d 490, 496-497, supra; Floyd v New York State Urban Dev. Corp., 33 NY2d 1, 6-7, supra). In Wambat the court upheld the Adirondack Park Agency Act (Executive Law art 27), which permitted zoning and planning regulations to supersede those of the 119 localities contained in the Adirondack Park area. In Floyd the right of the Urban Development Corporation to supersede local zoning laws was upheld.
The Constitution retains the Legislature’s right to adopt laws that do not affect “the property, affairs or government of a local government.” NY Constitution, article IX, § 3 (a) (3) provides that
“[ejxcept as expressly provided, nothing in this article shall restrict or impair any power of the legislature in relation to * * *
"(3) Matters other than the property, affairs or government of a local government.”
The same phrase is used in Statute of Local Governments § 11 (4). The use of the phrase “property, affairs or government” is a term of art which incorporates the pre-1963 meaning (Wambat Realty Corp. v State of New York, supra, 41 NY2d, at 497). As this court holds (at 841-843, supra), chapter 466 does not *847 impinge on "the property, affairs or government of a local government”. Thus, the Legislature was not required to use the two-legislative-session method of adoption.
CONCLUSION
There is sufficient support in the legislative history for the Legislature to determine that the estimated 200 to 300 lofts affected by chapter 466 require protection. The Loft Law originally dealt with "illegal and unregulated residential conversions” in violation of the Zoning Resolution (Multiple Dwelling Law § 280). The original law permitted certain "legalizations”; the amended version will, ultimately, increase the number of loft tenants who can use that process. Of course, the entire "grandfathering” process (see, Loft Bd Regs [Relating to Determination of Interim Multiple Dwelling Status] § I [A] [2]; ZR § 74-782) implies that nonconforming uses will be permitted to remain. Indeed, in the case at bar, 13 of 19 residential tenants whose original occupancy was illegal will be permitted to remain in the building.
The original legislative findings (Multiple Dwelling Law § 280) suggest that "legalization” should take place in conformity with the local zoning laws. Even if chapter 466 is inconsistent with that intent, the Loft Law, as amended, simply becomes a statute with some provisions inconsistent with the policy expressed five years earlier. Clearly the Legislature can change its mind. It is unreasonable to allow attacks on statutes merely because they are at odds with previously expressed legislative intent (cf., Morgan v Hedstrom, 164 NY 224, 230). The court is required to give effect to all parts of the statute; it is not free to disregard a later enactment (cf., Matter of Luis R., 98 Misc 2d 994, 997). The simple answer to petitioner’s complaint is that the 1987 had a somewhat different intent from the 1982 Legislature, which it chose to express by modification of prior law.
Chapter 466 may not be the definitive legislative solution to the problems of the affected units. It fails to provide details for their "legalization”, for example, DOB cannot issue alteration permits where there are violations of the Zoning Resolution. This court cannot provide statutory terms omitted by the Legislature (Furey v Town of Gravesend, 104 NY 405, 410). Thus, "legalization” may not be able to proceed until further implementing legislation is passed. However, Multiple Dwelling Law § 283 provides that if occupancy is permitted by the *848 Loft Law, any other "law, code, rule or regulation” shall be inapplicable. Thus, it may be that the administrative hurdles to "legalization” envisioned by petitioner do not exist. Those are issues for other proceedings. But, even if there were no current means for "legalization”, that is not a ground for invalidating chapter 466. This court cannot permit that omission to be a ground for disregarding the unmistakable legislative language in the statute that was enacted.
The court is not passing on the propriety of chapter 466. That is not a proper function for the judiciary. The court "May not substitute its judgment for that of the body which made the decision” (Hotel Dorset Co. v Trust for Cultural Resources, 46 NY2d 358, 370, supra). Judges, however much they agree or disagree with the wisdom of an act under review, are not free to use their personal views to validate or invalidate a law (see, Matter of Malpica-Orsini, 36 NY2d 568, 570, 571, supra).
Since petitioner may not prevail under current law, the court grants summary judgment of dismissal to respondent (see, CPLR 3212 [b]; 409 [b]).

. This special proceeding is governed by CPLR article 4 (see, RPAPL 701). It appears, therefore, that summary judgment motions pursuant to CPLR 3212 are not appropriate. The same result is reached, however, because the "summary determination” provisions of CPLR 409 (b) require judgment to be granted if there are no triable issues of fact (see also, RPAPL 745 [1]).

. Laws of 1987 (ch 466) also enacted Multiple Dwelling Law § 285 (3) which exempts landlords with IMD’s from paying the "conversion” payments to the Business Relocation Assistance Corporation required by ZR § 15-50; it also extends the time to file hardship applications for those owners where IMD units are granted coverage by chapter 466.

. The court notes that the Comptroller, several local community boards and council members supported passage (Bill Jacket, L 1987, ch 466).