OPINION OF THE COURT
Lawrence E. Kahn, J.
The Shoreham Nuclear Power Plant continues to be a costly white elephant whose footfall is heard in many quarters. The essence of the dispute before the court is the question of who shall pay the multimillion dollar school tax refund due its previous owner. By virtue of the Suffolk County Tax Act (SCTA), that burden would seem to fall squarely on the shoulders of the taxpayers that reside in the Shoreham-Wading River School District. Plaintiffs seek to change that result and brought the instant action seeking injunctive and declaratory relief based upon the alleged unconstitutionality of chapter 1018 of the Laws of 1983.
Previously, all parties had moved for summary judgment pursuant to CPLR 3212. Defendant Town of Brookhaven (Town) had also sought a change of venue to Suffolk County. This court granted summary judgment dismissing the action as premature. The Appellate Division subsequently modified that order finding that the action was ripe for a determination on the merits and remitted the matter to this court. (See, Prodell v State of New York, 211 AD2d 966.)
*610 The question of venue must, of course, be decided first. The defendant Town did not make a statutory demand for change of venue pursuant to CPLR 511 (a). The Town nevertheless contends that, pursuant to CPLR 504 (2), this action should be venued in Suffolk County. The statute provides that the place of trial for all actions against a town shall be in the county where the town is situated. (CPLR 504 [2].) "Despite its apparently mandatory tone, CPLR 504 does not foreclose the court from considering the discretionary grounds for change * * * of venue set forth in CPLR 510 (subd 3).” (Messinger v Festa, 94 AD2d 792 [citations omitted].) The Town must therefore demonstrate that the "convenience of material witnesses and the ends of justice will be promoted by the change” of venue sought. (CPLR 510 [3].)
However, CPLR 511 (a) also requires that a motion for change of place of trial under these circumstances "shall be made within a reasonable time after commencement of the action.” This action was commenced during January 1986. Defendant Town answered on March 27, 1986. This motion for change of venue was made on September 15, 1993. Since the operative facts controlling any decision regarding appropriate venue were known to the Town from the outset of the litigation, the 71/2-year period that has elapsed cannot be said to be a "reasonable time after commencement.” (CPLR 511 [a]; Walsh v J.W. Mays, Inc., 168 AD2d 444.) Moreover, although the policy of minimizing governmental inconvenience is a factor in the determination of a CPLR 510 (3) motion (Holmes v Greenlife Landscaping, 171 AD2d 916, 917), it is not the only factor. Here, there has been no showing made regarding the identities and occupations of the material witnesses who would need to travel to Albany County to participate in this litigation. Indeed, the motion is only supported by an attorney’s affidavit which "supplies no basis for a finding that * * * the convenience of material witnesses and the ends of justice will be promoted by the change.” (Supra, at 917.)
Accordingly, the venue of this action shall remain Albany County.
Turning to the merits, it is first noted that the SCTA was amended in 1980 to provide that towns in Suffolk County and not school districts would be responsible for school tax refunds based upon court-ordered reassessments. This codified an ongoing de facto practice previously at odds with State law that requires school districts to refund to a taxpayer excess school taxes paid as a result of an overassessment. (Real Property *611 Tax Law § 726 [1] [c]; see, Board of Educ. v State of New York, 111 AD2d 505.)
The amendment of the SCTA under attack in this action was made by the Legislature in 1983 and provides that school tax refunds shall not be charged by a town to a school district "except where the assessment subject to such proceeding is applicable to property improved by a nuclear powered electrical generating facility.” (L 1983, ch 1018, § 3.) The stated legislative purpose behind the 1983 amendment is succinctly set forth in the Assembly Memorandum in Support of Legislation: "This bill is to protect Suffolk Co. taxpayers from paying certain tax refunds for school districts in which they do not live. This bill is designed to prevent the taxpayers in Brookhaven Township from paying any tax refund on behalf to [sic] the ShorehamWading River School District due to Grievance system settlements on the LILCO nuclear power plant. The taxpayers of that school district have reaped windfall taxes from that plant and should therefore pay any refunds.” (Bill Jacket, L 1983, ch 1018.)
Arguing in support of the amendment, the Assembly sponsor stated that "nuclear powered electric generating facilities have created 'tax havens’ resulting in lower school taxes for residents of school districts which contain them. Taxpayers not located in those 'tax havens’ school districts should not have to pay school tax refunds to the power facilities receiving assessment reductions.” (NY St Assembly 1983 Comm Bill Mem, Assembly Bill 3969.) The sponsor further noted that it "would be an unconscionable burden to place on the taxpayers of Brook-haven Township when the people of the Shoreham-Wading River School District reaped the original eighteen million tax windfall.” (Id.)
Plaintiffs contend that the 1983 amendment to the SCTA violates the Equal Protection Clause of the New York State and Federal Constitutions[1] because it creates a classification that is arbitrary, capricious and discriminatory.
"Taxing statutes, like other social and economic legislation that neither classify on the basis of a suspect class nor impair a fundamental right, must be upheld if the challenged classification is rationally related to achievement of a legitimate State purpose.” (Trump v Chu, 65 NY2d 20, 25; Town of Tonawanda v Ayler, 68 NY2d 836, 837.) Moreover, "[t]here is a *612 strong presumption that statutes are constitutional, such that ' "unconstitutionality must be demonstrated beyond a reasonable doubt” ’ ” (Town of Brookhaven v State of New York, 142 AD2d 338, 340 [citations omitted]). It must also be presumed "that the Legislature has made sufficient inquiry to find the facts necessary to support the legislation as well as the need or desirability of the action.” (Oelbermann Assocs. Ltd. Partnership v Borov, 141 Misc 2d 838, 842 [citations omitted].)
It need not be said that the State has a legitimate interest in ensuring that similarly situated taxpayers pay the same share of the tax burden. (Foss v City of Rochester, 65 NY2d 247, 254.) "Equality and uniformity of taxation are the aim, for, if one taxpayer escapes payment, the burden is placed— disproportionately and unfairly — on another.” (Johnson v Smith, 297 NY 165, 170.) Here, the tax burden arrives in the shape of liability for court-ordered real property tax refunds. Since these refunds will ultimately be paid by the taxpayers of the responsible governmental subdivision, the State has an interest in seeing that the burden impacts similarly situated taxpayers in a uniform manner.
The 1983 amendment to the SCTA defines a class — taxpayers residing in school districts in which another taxpayer from that school district has received a court-ordered real property tax assessment reduction with respect to property improved by a nuclear powered electric generating facility. These taxpayers, by this amendment, have been afforded the distinction of being the only class of Suffolk County taxpayers that may not look to their town, the tax-assessing body, to refund overpaid school taxes. The constitutionality of this amendment thus turns on whether this classification rationally relates to the State’s interest in seeing that all similarly situated taxpayers bear the same tax burden with respect to real property tax refunds. (Trump v Chu, 65 NY2d, at 25, supra.)
In asking whether a challenged classification rationally relates to a legitimate State interest or purpose, the court must decide if it was "reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose.” (Western & S. Life Ins. Co. v Board of Equalization, 451 US 648, 668.) Here, the answer is no. The classification is flawed in that it presumes that the presence of a nuclear power plant in a school district creates a tax haven and/or windfall for the residents of that school district. Any type of improvement to real property can create a tax haven for residents of a school district if the result is that the particular parcel *613 contributes a substantial portion of the tax base. Similarly, the residents of a school district can be said to receive a "windfall” if they are not made to refund the school taxes that this over-assessed improvement generated. The Legislature’s judgment that taxpayers should not receive windfalls is not called into question here.[2] What is at issue, and what is in fact " 'palpably arbitrary’ ”, is the classification the Legislature has chosen to effect its aim. (Trump v Chu, 65 NY2d, at 25, supra.) The classification shifts the burden of refunding property taxes from the town to the school district based upon a single irrelevant criterion — the involvement of property improved by a nuclear power plant. The refund due after the tax certiorari proceedings may be only $1, but the statute nevertheless shifts the burden without any demonstrated inequity simply because a certain type of improvement was located on the subject real property.
To be valid, the challenged statutory provision must have some mechanism that facilitates the furthering of the State’s unquestionably legitimate interest — the fair distribution of the tax burden. "The State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational.” (City of Cleburne v Cleburne Living Ctr., 473 US 432, 446; Nordlinger v Hahn, 505 US 1.) Here, the classification and the goal, the "means” and the "end”, are wholly disconnected. The Legislature’s use of the challenged classification implies that nuclear power plants are inherently overassessed thus warranting the transfer of tax refund liability in every case to prevent windfall tax benefits. This is not a rational notion and will not be upheld even given that the Legislature has "large leeway in making classifications” in the field of taxation. (Trump v Chu, 65 NY2d, at 25, supra, quoting Lehnhausen v Lake Shore Auto Parts Co., 410 US 356, 359.)[3]
That the challenged amendment may, in this case, achieve a result perceived as fair does not cure its constitutional infirmity. Statutes must be written to apply to all persons similarly situated and any statute written to apply to one individual or group "would offend the 'element of neutrality that must *614 always characterize the performance of the sovereign’s duty to govern impartially.’ ” (Long Is. Light. Co. v Cuomo, 666 F Supp 370, 424, quoting City of Cleburne v Cleburne Living Ctr., 473 US, at 452, supra.) This is the heart of equal protection. Indeed, "nothing opens the door to arbitrary action so effectively as to allow * * * officials to pick and choose only a few to whom they will apply legislation and thus escape political retribution that might be visited upon them if larger numbers were affected. Courts can take no better measure to assure that laws will be just than to require that laws be equal in operation.” (Railway Express Agency v New York, 336 US 106, 112-113 [Jackson, J., concurring].) The statute here must therefore be assessed from a perspective that looks beyond Shoreham.
Accordingly, chapter 1018 of the Laws of 1983 shall be declared unconstitutional under both the New York State and Federal Constitutions because the classification created bears no relationship to the achievement of a legitimate State purpose and its application shall therefore be enjoined.
Plaintiffs’ motion for summary judgment is granted. Defendants’ motions are denied.

. The Legislature’s implicit finding, that taxpayers who benefit from a windfall are not similarly situated with taxpayers who do not, is likewise not questioned and is presumptively valid.

. While legislative classifications are "allowed some play in the joints,” the State in choosing its criterion "cannot be so casual as this, particularly when a more precise and direct classification is easily drawn.” (Williams v Vermont, 472 US 14, 23, n 8.)